2010 Ark. App. 340

**R.J. CHIODINI, Appellant**

v.

**David LOCK, Appellee.**

No. CA 09–297.

Court of Appeals of Arkansas.

April 21, 2010.

Rehearing Denied May 26, 2010.

Rodrick J. Chiodini, pro se.

David Lock, Fox, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant R.J. Chiodini sued his neighbor, appellee David Lock, claiming that Lock constructed a fence that breached a long-accepted boundary line and encroached on Chiodini's land. Following several discovery disputes and the denial of Chiodini's motion for summary judgment, the circuit court held a bench trial and ruled against Chiodini. In this pro se appeal, Chiodini argues that the court erred in its discovery rulings, in denying his motion for summary judgment, and in entering the final decree. We affirm and remand with instructions for the court to amend its final decree to include a specific legal description of the boundary at issue.

## I. *Background facts*

Chiodini and Lock each own large tracts of land in Stone County. Lock's family has owned his land for over fifty years. Chiodini's property, which lies south of Lock's, was previously owned by the Ira Thomas family, who sold it to Luke Elliott in 1995. Elliott sold the land to Chiodini in 2003. For many years, parts of an old fence existed near the properties' common border. In the mid-to late 1990s, Lock built a fence that ran somewhat parallel to, but south of, the old fence line. According to Lock, he obtained a survey and built the new fence on the actual border line, which his neighbor, Luke Elliott, agreed to. Later, Lock fenced another area near the common border, creating a small area for hay storage.

When Chiodini bought Elliott's property, he walked the area with his GPS unit and concluded that there were discrepancies between the placement of Lock's new fences and the true border represented by the old fence. He therefore determined

that Lock's new fencing encroached on approximately three acres of his land. On December 21, 2005, Chiodini sued Lock seeking ejectment, removal of the new fences, damages for trespass, an injunction, and an order establishing a boundary by acquiescence in accordance with the old fence line. Several discovery disputes ensued, and the circuit court ruled in Lock's favor on all of them. Chiodini then filed a motion for summary judgment, which the court denied. The case went to trial and the circuit judge, sitting as fact-finder, refused to establish a boundary by acquiescence. Chiodini filed a timely notice of appeal, and this appeal followed.

## II. Discovery rulings

Chiodini served Lock with two sets of discovery during the first four months of the case. The first set was served on December 30, 2005, along with the summons and complaint, and it consisted of forty requests for admission, twenty-one interrogatories, and eight requests for production of documents. The second set, consisting of twenty-five requests for admission, fifteen interrogatories, and eight requests for production of documents, was served in late April 2006. After Lock responded to some of the discovery, Chiodini filed numerous motions, asserting that the responses were late or inadequate. Chiodini asked the court to deem the requests for admission admitted; to compel Lock to provide additional answers to the interrogatories and requests for production; and to prohibit Lock from introducing at trial matters contained in his discovery responses. Judge Tim Weaver conducted several hearings and issued bench rulings on Chiodini's motions

but recused before any written orders could be entered. Thereafter, Judge Stephen Choate heard the case and entered a series of orders on August 20, 2007, denying Chiodini's motions and prohibiting him from conducting further discovery. Chiodini contends that the court's rulings were in error and that Lock should be sanctioned for discovery violations.[1] Our standard of review is well established. The trial court has wide discretion in matters pertaining to discovery and a trial court's decision will not be reversed absent an abuse of discretion. *Parker v. S. Farm Bureau Cas. Ins. Co.,* 326 Ark. 1073, 935 S.W.2d 556 (1996). An abuse of discretion occurs when discretion is applied thoughtlessly, without due consideration, or improvidently. *Oldham v. Morgan,* 372 Ark. 159, 271 S.W.3d 507 (2008).

### A. First set of discovery

Answers to Chiodini's first set of discovery were due on February 13, 2006. *See* Ark. R. Civ. P. 33(b)(3), 34(b)(2), and 36(a) (2009). On January 26, 2006, Lock's attorney, Mitch Cash, mailed responses to the interrogatories and requests for admission to Chiodini.[2] The responses show that Lock answered twenty interrogatories and objected to one and that he denied those requests for admission asking him to characterize the old fence line as a boundary between the properties. On March 3, 2006, Chiodini notified Cash that the responses he received were unsigned. Cash quickly forwarded signed copies, explaining that he "was having health problems at the time" and had undergone surgery on January 27, 2006.

1. Chiodini petitioned the Arkansas Supreme Court for a writ of certiorari with regard to the discovery orders, but the writ was denied. *Chiodini v. Lock,* 373 Ark. 88, 281 S.W.3d 728 (2008).

2. The record does not reveal what became of the request for production of documents.

On April 20, 2006, Chiodini filed a motion to compel more responsive answers to two of the interrogatories. Attorney Cash was in the process of withdrawing from the case, but Lock's new attorneys filed additional responses on May 9, 2006. Chiodini then filed another motion to compel, complaining that the responses did not repeat each interrogatory before answering as required by Ark. R. Civ. P. 33(b)(2) and that the responses were signed by Lock's attorney rather than by Lock himself. Judge Weaver held a hearing on June 28, 2006, and directed Lock's attorneys to "have him sign everything." Five days after the hearing, Lock filed "Substituted Responses to Plaintiff's 1st Set of Interrogatories," which contained answers or objections to all twenty-one interrogatories, signed and verified by Lock (although the verification mistakenly referenced the requests for admission).

On July 12, 2006, Chiodini again asked the court to order Lock to sign and verify his original answers to interrogatories. He also asked that the requests for admission be deemed admitted based on Lock's failure to provide signed responses within forty-five days of service. With regard to the admissions, Lock answered that attorney Cash's failure to send signed responses on January 26, 2006, was the result of Cash's illness, which constituted excusable neglect. Judge Weaver held a hearing on the motions, but the excerpt of the hearing, which Chiodini has provided as the record on appeal, does not reveal whether the judge ruled on the motions. However, when Judge Choate took over the case, he denied Chiodini's motions, finding that Judge Weaver ruled from the bench that Lock's interrogatory responses were "complete, adequate, and in compliance with [Rule 33]" and that Lock's responses to the requests for admission were neither deficient nor late.

█ We first address Chiodini's argument regarding the interrogatories. He contends that Lock was required to sign and verify the original answers to interrogatories and not merely provide new, substituted responses. We disagree. Arkansas Rule of Civil Procedure 26(e) (2009) permits a party to "amend" discovery responses, and in fact imposes a duty to do so if the party learns that the responses are incomplete or incorrect. Furthermore, Chiodini has not convinced us that receiving substituted answers to interrogatories more than two years before trial affected his ability to conduct additional discovery or to prosecute his case. Chiodini cannot obtain reversal unless he can demonstrate prejudice resulting from the substituted responses. *See generally Keenan v. Am. River Transp. Co.*, 304 Ark. 42, 799 S.W.2d 801 (1990). *Compare Coulson Oil Co. v. Tully*, 84 Ark.App. 241, 139 S.W.3d 158 (2003) (affirming a circuit court's imposition of sanctions where the defendant supplemented a deliberately untrue response one month before trial, which impeded the plaintiff's ability to depose a witness). We therefore find no error on this point.

█ Chiodini argues next that the circuit court erred in not deeming the requests for admission admitted. A requested matter is admitted unless, within thirty days after service of the request (or within forty-five days if the request was served with the complaint), the party to whom the request is directed serves on his opponent a written response or objection, signed by the party or his attorney. Ark. R. Civ. P. 36(a).[3] Clearly, Lock's initial, unsigned re-

---

**3.** Chiodini asserts that the responses must also be verified by a party, but that requirement was deleted from Rule 36 in 1983. *In re Amendments to the Rules of Civ. Proc.*, 279 Ark. 470, 651 S.W.2d 63 (1983); David New-

sponses did not comport with Rule 36(a)'s requirement that responses be signed by the party or his attorney. *See Womack v. Horton,* 283 Ark. 227, 674 S.W.2d 935 (1984). However, a circuit court may, upon motion, grant additional time to answer requests for admission, even if the time for answering has expired, based on excusable neglect. *See* Ark. R. Civ. P. 6(b)(2) (2009). *See also Borg–Warner Acceptance Corp. v. Kesterson,* 288 Ark. 611, 613, 708 S.W.2d 606, 607 (1986) (holding that Rule 6(b)(2) applies to requests for admission and ₇provides "broadly for extensions of time to respond in instances of excusable neglect"). In the case at bar, Lock pleaded excusable neglect based on his attorney's illness during the time he sent the unsigned responses.

■ Our supreme court has not favored a party's filing late responses in instances involving ordinary office distractions, *Allen v. Kizer,* 294 Ark. 1, 740 S.W.2d 137 (1987), or secretarial error. *Barnett Rest. Supply, Inc. v. Vance,* 279 Ark. 222, 650 S.W.2d 568 (1983). However, the particular facts of each case must be examined and, when the facts warrant, acceptance of late responses is required. *Gibson v. Gibson,* 87 Ark.App. 62, 185 S.W.3d 122 (2004); *Belcher v. Bowling,* 22 Ark.App. 248, 738 S.W.2d 804 (1987). Our court has also taken into consideration whether the party who propounded the requests was prejudiced by a late response. *See Belcher,* 22 Ark.App. at 251, 738 S.W.2d at 806.

In the present case, we cannot say that the circuit court abused its discretion in refusing to deem the requests admitted based on a late response. Counsel's illness, which required surgery on the day after the unsigned responses were sent, could be considered by the court as a

legitimate, extraordinary distraction leading to excusable neglect. Furthermore, counsel did not simply ignore the requests or demonstrate a lack of diligence; he responded to the requests in a timely fashion but simply neglected to sign them. Upon being told of the omission, he immediately sent signed responses. *Compare Adams v. Moody,* 2009 Ark. App. 474, 324 S.W.3d 348 (affirming a finding of a lack of excusable neglect where a party claimed illness and filed several motions over a two-month period seeking extensions of time to file ₈an answer but did not file an answer during the two-month period). Moreover, we cannot see how Chiodini was prejudiced by the unsigned responses, given that he received signed copies of the responses very early in the lawsuit and only a few days after he notified Cash of his mistake.

■ Chiodini also argues that Judge Choate erred in finding that Judge Weaver heard the motion to deem the requests admitted and issued a bench decision on the motion. We cannot ascertain all that occurred below with reference to Judge Weaver's rulings because Chiodini designated only excerpts from Judge Weaver's hearings. It is the appellant's burden to bring up a record sufficient to demonstrate error. *Judkins v. Duvall,* 97 Ark.App. 260, 248 S.W.3d 492 (2007). In any event, we view Judge Choate's ruling as correct on the merits.

### B. *Second set of discovery*

Chiodini propounded a second set of discovery in April 2006. His requests for production sought, among other things, copies of the fronts and backs of certain checks and receipts or invoices from establishments that sold fencing material and had transacted business with Lock be-

bern & John J. Watkins, *Civil Practice & Procedure* § 23.3, at 469 (4th ed.2006).

tween 1995 and 2001. Within thirty days, Lock provided copies of the fronts of the requested checks. However, he objected that the other materials were "too numerous to copy." Lock did not answer the interrogatories or requests for admission within thirty days. Citing Lock's late or nonresponsive answers, Chiodini filed motions to compel regarding the requests for production and the interrogatories, and he asked that the requests for admission be deemed admitted.

At the June 28, 2006 hearing conducted by Judge Weaver, Lock's attorneys provided Chiodini with copies of the backs of the requested checks and promised that Chiodini could view the materials that were too cumbersome to copy within a few days. They also promised that Chiodini would have responses to the interrogatories within a few days. Shortly after the hearing, Lock filed "Substituted Responses to Plaintiff's 2nd Set of Interrogatories" and provided Chiodini with 152 documents contained in the attorneys' files. Judge Choate would later rule that Lock's answers to the interrogatories were "complete, adequate, and in compliance with [Rule 33]" and Lock's provision of the requested documents rendered any nonconformity with the discovery rules moot.

On appeal, Chiodini argues that Lock's answers to the interrogatories were "an attempt to replace previously verified responses and change answers." However, the record indicates that, despite Lock's designating his answers to the second set of interrogatories as "substituted," he filed only one set of answers to the second set of interrogatories. Chiodini also argues that Lock's answers to both the first and second set of interrogatories were unresponsive. He points out that some of the answers simply cited a long narrative set forth in a previous answer and that other responses did not provide the information requested. We are not impressed with many of Lock's responses and agree that some of them were less than forthcoming. However, again, Chiodini has not convinced us that he was prejudiced by these alleged discovery violations or that reversal is warranted. As the appellant, he bears the burden of demonstrating reversible error. *Arrow Int'l, Inc. v. Sparks*, 81 Ark.App. 42, 98 S.W.3d 48 (2003). Likewise, his complaint that he received a "jumble of documents" in response to his requests for production fails to persuade, given that the record does not reveal precisely what documents he received or how the responses affected his ability to conduct the lawsuit. Chiodini cites *Calandro v. Parkerson*, 333 Ark. 603, 970 S.W.2d 796 (1998), where our supreme court affirmed the circuit court's imposition of sanctions on a plaintiff who gave evasive and nonresponsive answers to discovery. However, in its affirmance, the supreme court deferred to the circuit court's discretion on matters involving discovery sanctions, and we likewise defer to the circuit court in this case.

Regarding the requests for admission, Judge Weaver refused to deem them admitted because Chiodini had not filed the requests with the circuit clerk as required by Ark. R. Civ. P. 36(c). However, Judge Weaver ordered Lock to answer the requests within five days, and Lock did so. Later in the proceedings, Judge Choate also refused to deem the requests admitted, ruling that the time for Lock's response did not begin running until Chiodini filed the requests.

Rule 36(a) of the Arkansas Rules of Civil Procedure provides that each matter contained in a request for admission is admitted unless answered or objected to "within thirty days after service." Rule 36(c) provides that requests for admission "must be filed in a separate document so titled and

shall not be combined with interrogatories, document production requests, or any other material." *See also* Ark. R. Civ. P. 5(c)(1) (2009) (stating that all papers subsequent to the complaint, which are required to be served on a party or his attorney, shall |₁₁be filed with the clerk of the court either before service or within a reasonable time thereafter). The circuit court interpreted Rule 36(c) to mean that the time for responding to requests for admission runs from the date the requests are filed. Chiodini claims that the filing requirement in Rule 36(c) is independent of Rule 36(a)'s statement that requests for admission are deemed admitted unless answered or objected to "within thirty days after service."

Chiodini presents an interesting question. However, we decline to rule on the precise issue of whether the response time under Rule 36 runs from the date of service or the date of filing. Instead, we conclude that, under the circumstances of this case, the circuit court did not act improvidently, thoughtlessly, or without due consideration in its resolution of the situation. We note first that the requests would have reached attorney Mitch Cash at approximately the same time he was seeking to withdraw from the case. Lock obtained new representation, and it was unclear at the hearings if those attorneys had received the requests or, if so, when they received them. Further, Chiodini was unquestionably required to file the requests for admission under Rule 36(c) and Rule 5(c)(1). He neglected that requirement at his peril for more than sixty days. He therefore should not be heard to complain that the circuit court exercised its discretion to extend Lock's response time for an additional five days from the hearing date.[4]

|₁₂Chiodini also contends that some of Lock's responses were insufficient because they simply "denied" the request without explanation. Rule 36(a) provides that responses shall "specifically admit or deny the matter *or* set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." Under this rule, "denied" is an acceptable response. *See* Watkins & Newbern, § 23:2, at 468.[5]

### C. Protective order prohibiting further discovery

■ On July 3, 2006, Lock filed a motion for a protective order concerning Chiodini's attempt to subpoena a witness, Ira Thomas, for deposition. The motion recited that the court had admonished Chiodini at the June 2006 hearing about making it difficult to schedule a deposition and that, two days after the hearing, he subpoenaed Thomas, an elderly and infirm resident of Mountain View, to attend a deposition in Heber Springs. The motion also asserted that Chiodini appeared at Thomas's home, asked him to sign a piece of paper, and became "demanding" when Thomas refused. Further, the motion stated that Chiodini persisted in filing motions to compel despite Lock's provision of documents, interrogatory responses, and responses to requests for admission as or-

---

4. Chiodini argues that Lock was not prejudiced by his failure to file the requests. However, we cannot reach that conclusion with certainty, given that a filing might have provided Lock's attorneys with additional notice of the requests. We therefore do not consider this argument as a ground for reversal.

5. Chiodini cites *Smith v. Goodyear Tire & Rubber Co.*, 261 Ark. 541, 543, 549 S.W.2d 798, 799 (1977), *for its statement that, where a fact cannot be admitted, the reasons must be set forth in detail.* However, *Smith* was decided before our adoption of the Rules of Civil Procedure and we decline to accord it any weight on this issue.

dered by the court. Lock sought a protective order that, among other things, required the Thomas deposition to be held in Mountain View, prohibited Chiodini from further discovery without making application to the court, and shielded Lock from "further annoyance, undue burden, and undue expense." Judge Weaver signed an order that scheduled Mr. Thomas's deposition in Mountain View rather than Heber Springs and prohibited Chiodini from seeking further discovery. The order was filed later in the case.

Chiodini argues, without elaboration, that the court's order hindered him from obtaining meaningful discovery in preparation for trial. However, at the time Judge Weaver signed the order, Chiodini had filed two sets of discovery and had received responses. His argument does not reveal what more he would have done, had the ban not been in place. Furthermore, the court's order apparently arose out of a situation in which Chiodini was harassing an elderly witness and had continued to file motions to compel and motions for reconsideration, despite having received responses to discovery and court rulings on all discovery matters. We therefore see no abuse of discretion warranting reversal.

Based on the foregoing, we affirm the circuit court's discovery rulings. In light of our holding, we deny Chiodini's request to remand the case for imposition of sanctions against Lock.

### III. Denial of summary judgment

On May 9, 2008, Chiodini filed a motion for summary judgment, arguing that the old fence line constituted a border by acquiescence as a matter of law. The circuit court held a hearing on the motion, during which Lock called witnesses to testify. Chiodini objected, arguing that it was improper for Lock to supplement his response to the summary-judgment motion with live testimony and that he was not prepared to cross-examine witnesses. The court overruled Chiodini's objection and allowed Lock and his mother to testify that the old fence did not represent a boundary line and that the new fence constructed by Lock was within the true boundary line. At the conclusion of the testimony, the court denied Chiodini's motion for summary judgment, ruling that fact questions remained to be decided. The court also stated that, even if it was wrong to allow live testimony at the hearing, any error was harmless because the testimony revealed nothing that was not already a part of the record in the form of affidavits. Chiodini argues for reversal that 1) the circuit court improperly allowed oral testimony at the summary-judgment hearing, and 2) Lock failed to meet proof with proof in responding to the motion for summary judgment.

Chiodini is correct that Ark. R. Civ. P. 56 (2009) does not permit supplementation by oral testimony of the pleadings, depositions, admissions, interrogatories, affidavits, and so forth, that a court may consider in ruling on a motion for summary judgment. *Mathews v. Garner*, 25 Ark. App. 27, 751 S.W.2d 359 (1988). However, as the court itself observed, the testimony from David Lock and his mother revealed little more than what was contained in their affidavits attached to Lock's response to the motion for summary judgment. Our review of the affidavits bears this out. We therefore see no ground for reversible error. In any event, the denial of a motion for summary judgment is not subject to review on appeal, even after there has been a trial on the merits. *Bull Motor Co. v. Murphy*, 101 Ark.App. 33, 270 S.W.3d 350 (2007).

### IV. Final decree

On September 29, 2008, the case was tried to the court sitting as fact-finder.

Chiodini's predecessor in title, Luke Elliott, testified that when he first purchased the property, he understood that its northern border ran along an old fence line, and he passed that understanding on to Chiodini. Elliott further testified that, in 1999 or 2000, Lock told him that he planned to survey the border and construct a new fence thereon. Lock then built a new fence south of the old fence line, and Elliott said that he accepted that fence as being on the surveyed border. However, Elliott stated that, based on Lock's admission in discovery that the survey was conducted by an unlicensed person, Lock misrepresented the situation.

Jerry Perry, another land owner in the area, testified that there had been an old fence line on his property since at least 1979, which joined the old fence line at issue in this case. Perry said that he always considered the old fence to be his boundary line. However, he said that he had not commissioned a survey of the area along his boundary.

David Lock testified that he obtained his land in 1989 from his father, who had purchased the property in 1958. According to Lock, an old fence existed on the property in 1958, but it was used to separate livestock rather than serve as a border. Lock stated that no one knew where the true border line of the property was. Lock testified further that he built some fences in the 1970s that were close to the old fence, which was now deteriorated, but that those fences were not understood to represent boundaries. Lock said that he built what was being referred to as the new fence in 1995 or 1996, not in 1999 or 2000 as Luke Elliott had testified. He also said that Elliott never claimed that the old fence line was the border.

Gene Gorton testified that he performed a survey of the common boundary line between Chiodini and Lock. The survey, which was conducted in either 2003 or 2005, is difficult to interpret but appears to reflect that Lock's new fence does not encroach on Chiodini's land. Gorton said that Chiodini asked him to set a re-bar in the old fence line and to draw a straight line to a tree corner, but Gorton could not locate a fence in between those marks.

Chiodini testified that he was not willing to be bound by a survey because the old fence line represented a boundary by acquiescence. He admitted that Lock had told him that he (Lock) and Elliott had agreed that the new fence "would be the line." However, Chiodini said that their boundary did not make sense based on his GPS observations.

Ira and Imogene Thomas, who owned Chiodini's property before Luke Elliott, testified that they never knew where their northern boundary was and that they did not tell Elliott where a dividing line was. Lock's mother, Bonnie Lock, testified that she was never aware of the boundary line between the northern and southern properties. Mrs. Lock stated that the old fence that Chiodini wanted to claim as a boundary was just "an old torn down fence" that "doesn't make any straight line." She said that she never recalled anyone saying that the old fence was the boundary line.

Janice Lock, David Lock's wife, testified that she prepared a diagram of the area around the old fence line. She stated that there was "not much" fencing in some areas and that there were places where one could walk in between the fence. Donald Lock, David's uncle, testified that there were fences "all over" the Lock land and that no one ever treated the old fencing as a border. He said that David built a new fence on the boundary line in 1996.

On December 11, 2008, the court entered an order denying Chiodini's claim for

a boundary by acquiescence. The court ruled that Chiodini failed to prove by way of words, actions, or conduct a tacit agreement between landowners regarding a boundary line, other than the "new fence," which Chiodini denied was a boundary. The court then quieted title in accordance with the Gorton survey.

Chiodini argues on appeal that the evidence does not support the court's refusal to establish a boundary by acquiescence. Our standard of review is whether the circuit court, sitting as fact-finder, clearly erred in its ruling. *DC Xpress, LLC v. Briggs,* 2009 Ark. App. 651, 343 S.W.3d 603. We give due deference to the superior position of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.* Further, it is within the province of the trier of fact to resolve conflicting testimony. *Id.*

When adjoining landowners silently acquiesce for many years in the location of a boundary and thus apparently consent to that line, the result is a boundary by acquiescence. *Brown v. Stephens,* 2009 Ark. App. 614, 2009 WL 3029308. A boundary by acquiescence is usually represented by a fence, a turnrow, a lane, a ditch, or some other monument tacitly accepted as visible evidence of a dividing line. *Id.* An express agreement to treat a fence as the dividing line is not required. Instead, a boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Id.* Acquiescence need not occur over a specific length of time, although it must be for a long period of time. *Id.*

In the present case, Lock and several other witnesses, including his family members and the Thomases, who once owned Chiodini's property, testified that they did not consider the old fence to be a boundary line and that they were not sure where the boundary line between the two properties was located. Many of these same witnesses also testified that the old fence was used to contain cattle rather than to declare a border and that the old fence was too run down to be considered a border. Under these circumstances, we cannot say that the circuit court clearly erred in ruling that Chiodini failed to prove a tacit acceptance among landowners of the old fence line as a boundary. Chiodini argues that Lock admitted during his testimony that some of his interrogatory responses were inaccurate. However, this went to Lock's credibility, which was a matter for the circuit court to decide. *DC Xpress, supra.* In any event, Lock was not the only witness at the trial who denied the existence of the old fence as a boundary line.

We therefore affirm the circuit court's final decree. However, we remand with instructions for the circuit court to amend its order to include a specific legal description of the boundary at issue. *See Garringer v. Garringer,* 2010 Ark. App. 297, 374 S.W.3d 769. Even though the court's order mentions the Gorton survey, the order must describe the boundary with sufficient specificity that it can be identified solely by reference to the decree. *Boyster v. Shoemake,* 101 Ark.App. 148, 272 S.W.3d 139 (2008); *Adams v. Atkins,* 97 Ark.App. 328, 249 S.W.3d 166 (2007).

Affirmed and remanded with instructions.

HENRY and BROWN, JJ., agree.