Cite as 2020 Ark. App. 140

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III

**No.** CV-18-585

| | |
|---|---|
| WYNNE-ARK., INC., D/B/A KELLEY'S RESTAURANT | **Opinion Delivered:** February 26, 2020 |
| APPELLANT | APPEAL FROM THE CROSS COUNTY CIRCUIT COURT [NO. 19CV-14-42] |
| V. | |
| RICHARD BAUGHN CONSTRUCTION | |
| APPELLEE | HONORABLE RICHARD L. PROCTOR, JUDGE |
| | REVERSED |

## BART F. VIRDEN, Judge

This interlocutory appeal stems from the Cross County Circuit Court's decision to grant Richard Baughn Construction's (RBC's) motion to compel discovery regarding a separate agreement between plaintiff Wynne-Ark., Inc., d/b/a Kelley's Restaurant (Kelley's) and a second defendant, Asphalt Producers, LLC (API). This is the second interlocutory appeal regarding this discovery dispute.[1] *See Wynne-Ark., Inc. v. Richard Baughn Constr.*, 2017 Ark. App. 685, 545 S.W.3d 771. We reverse.

### I. *Relevant Facts*

On June 2, 2014, Kelley's filed a complaint in the circuit court seeking damages

---

[1]Our jurisdiction is pursuant to Rule 2(f) of the Arkansas Rules of Appellate Procedure–Civil.

against API and its subcontractor, RBC. In the complaint, Kelley's alleged damages arising from the defendants' negligent performance of a state highway construction contract. The circuit court ordered all parties to attend mediation, and on September 20, 2016, the parties attended the mediation and executed confidentiality agreements. As a result of mediation, Kelley's and API entered a confidential settlement agreement.

The next day, on September 21, RBC filed an amended answer and cross-claim against API seeking contribution and apportionment of fault among the parties found to be responsible for Kelley's damages, if any. API responded that RBC had not stated facts or a legal basis for a claim, and the cross-claim should be dismissed. Kelley's filed an objection to RBC's second set of interrogatories and a request for production of documents.

On December 2, 2016, RBC responded that Kelley's had recently reached a settlement agreement with API, and RBC was entitled to discovery of the document to ascertain "what factual allegations remain pending against RBC and what damages are attributable to same." RBC argued that it was entitled to information regarding fault and damages pursuant to apportionment of fault; thus, disclosure of the document was necessary for RBC to develop a defense.

RBC moved to compel discovery. In the motion, RBC asserted that pursuant to court-ordered mediation, Kelley's and API had reached a confidential settlement agreement. RBC explained that it had propounded discovery seeking the amount and terms of the settlement and release but that Kelley's had refused to disclose the document. RBC argued that the terms of the settlement were relevant and not privileged because RBC must have knowledge of the terms to "prepare for trial and evaluate RBC's liability and damages." RBC also asserted that it was entitled to joint-tortfeasors settlement credit under the

2

Uniform Contribution Among Tortfeasors Act (UCATA), codified at Ark. Code Ann. §§ 16-61-201 et seq. (Repl. 2005 & Supp. 2019), and that right was not abrogated in any way by the Civil Justice Reform Act of 2003 (CJRA) codified at Ark. Code Ann. §§ 16-55-201 et seq. (Repl. 2005 & Supp. 2019). RBC argued that it was entitled to apportionment of fault, with the greater amount of either fault or the settlement amount being apportioned to the settling defendant. RBC also contended that pursuant to the CJRA, it was entitled to have API appear on the verdict forms to aid the jury in apportioning fault. RBC clarified that it was not requesting that the court rule on the admissibility of the document—only its discoverability.

Kelley's responded to the motion to compel arguing that Ark. Code Ann. § 16-7-206 (Repl. 2010) guarantees the confidentiality of any record or writing made during mediation. Kelley's argued that RBC's negligent acts and ensuing damages were separate from API's; thus, the definition of "joint tortfeasors" had not been met, and RBC would not be entitled to any credit of the amount paid by API. Kelley's asserted that "for the same reasons, Asphalt Producers should not appear on the jury form and there should be no allocation of fault." Kelley's also questioned the retroactive application of Act 1116 and the right to allocation of fault that was created by it. On January 23, 2017, Kelley's sought to dismiss without prejudice any claims against API. Kelley's explained that it had executed an agreement with API to resolve all claims, and the circuit court granted Kelley's motion.

On February 7, API filed a second motion to dismiss RBC's cross-claim. API argued that RBC could not state a claim for contribution against API because although RBC may have the right to introduce evidence of API's negligence, and RBC may have the right to seek apportionment of fault, these rights are not connected to a right of contribution against

3

API. API asserted that the right of contribution does not arise until a jury finds that RBC is required to pay an amount of damages that exceeds its pro rata share of common liability, and because the case is pending and no finding of liability has been made, a cause of action for contribution does not exist. Furthermore, API argued that if RBC is found liable, API is entitled to a setoff that ensures RBC will pay only its pro rata share of fault. The court did not rule on the motion to dismiss the cross-claim.

The circuit court entered an order compelling discovery "with the proviso that there will be a Protective Order with regard to the resolution between Asphalt Producers, LLC and Plaintiff, which resolution took place during mediation, and the parties agree that there was a stipulation that the document resulting from the mediation was confidential." The circuit court declined to rule on the admissibility of the document. The circuit court found that whether a confidential settlement agreement is discoverable under these facts is an issue of first impression in Arkansas; thus, an interlocutory appeal is appropriate because this case presents an issue that is not "merely the resolution of a discovery matter, but involves another area of law that could be impacted by the resolution of the discovery matter."

On March 8, Kelley's petitioned for permission to file an interlocutory appeal, and the Arkansas Supreme Court granted Kelley's request. The case was transferred to our court, and we reversed and remanded the case for further findings, holding that

> [c]learly, whether the document in question is relevant to RBC's defense must be based on the determination of whether the parties are joint tortfeasors, whether the right of contribution exists in this case and, if so, at what point in the trial the right of contribution attaches. We hold that the circuit court applied its discretion without due consideration by ordering disclosure of the document without first deciding the preliminary issues relating to contribution.

*Wynne-Ark., Inc.*, 2017 Ark. App. 685, at 8, 545 S.W.3d at 775–76.

4

Following the hearing on remand, the circuit ordered disclosure of the agreement and ruled that (1) it "maintains the rulings previously made in the February 27, 2017 order"; (2) RBC was under the direction and control of API; thus, they are joint tortfeasors; (3) the document is relevant, and the right of contribution exists; (4) because RBC and API are joint tortfeasors, any damages they may have caused are indistinguishable; and (5) the right to contribution exists, though it is impossible to determine when the right of contribution attaches until evidence is presented at trial. In addition to these findings, the court specifically declined to reach the issue of admissibility of the agreement. Kelley's filed a motion for interlocutory appeal, and our supreme court granted the motion.

The case is now before us again. After reviewing the briefs and hearing the parties' oral argument, we disagree with the circuit court's conclusion that the confidential settlement agreement is relevant now and discoverable before the right of contribution has attached—if it ever attaches. Also, we hold that the circuit court erred in finding at this point in the case that the defendants were joint tortfeasors.

## II. *Discussion*

The circuit court has wide discretion in matters pertaining to discovery, and a circuit court's decision will not be reversed absent an abuse of discretion. *Chiodini v. Lock*, 2010 Ark. App. 340, 374 S.W.3d 835. An abuse of discretion occurs when discretion is applied thoughtlessly, without due consideration, or improvidently. *Id.* A motion for production of documents must be considered in light of the particular circumstances that give rise to it, and the need of the movant for the information requested. *Shook v. Love's Travel Stops & Country Stores, Inc.*, 2017 Ark. App. 666, 536 S.W.3d 635.

5

The general rule regarding the scope of discovery set forth in Rule 26 of the Arkansas Rules of Civil Procedure allows parties to obtain discovery

> regarding any matter, not privileged, which is relevant to the issues in the pending actions, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, identity and location of any books, documents, or other tangible things and the identity and location of persons who have knowledge of any discoverable matter or who will or may be called as a witness at the trial of any cause. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears *reasonably calculated to lead to the discovery of admissible evidence.*

Ark. R. Civ. P. 26 (b)(1) (emphasis added).

The salient question here is whether that confidential settlement agreement is reasonably calculated to lead to the discovery of admissible evidence. We disagree with the circuit court's decision that the circumstances herein merit the immediate disclosure of the confidential settlement agreement. Kelley's asserts that Ark. Code Ann. § 16-7-206(b) requires that the confidential settlement agreement must be kept confidential. RBC responds that this court should limit the scope of the statute to subsection (a), which pertains to communications made during the dispute-resolution process and does not include a written resolution made as a result of the dispute-resolution process. Arkansas Code Annotated section 16-7-206 sets forth the following:

> (a) Except as provided by subsection (c) of this section, a communication relating to the subject matter of any civil or criminal dispute made by a participant in a dispute resolution process, whether before or after the institution of formal judicial proceedings, is confidential and is not subject to disclosure and may not be used as evidence against a participant in any judicial or administrative proceeding.

> (b) *Any record or writing made at a dispute resolution process is confidential*, and the participants or third party or parties facilitating the process shall not be required to testify in any proceedings related to or arising out of the matter in dispute or be subject to process requiring disclosure or production of information or data relating to or arising out of the matter in dispute.

6

(c) If this section conflicts with other legal requirements for disclosure of communications or materials, the issue of confidentiality may be presented to the court having jurisdiction of the proceedings to determine in camera whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure.

(Emphasis added.)

Whether confidential agreements arising from mediation should be discoverable by outside parties is an issue of both first impression and substantial public interest. Kelley's contends that subsection (b) of the statute setting forth that "[a]ny record or writing made at a dispute resolution process is confidential" furthers the goal of promoting the use of mediation and other alternative dispute resolutions. Though Arkansas has not directly dealt with this issue, we agree with Kelley's that protecting the confidentiality of agreements supports and encourages the dispute-resolution process. Moreover, the General Assembly has made it clear that it encourages alternative dispute resolution as a matter of public policy. Arkansas Code Annotated section 16-7-201 sets forth the intent of the General Assembly to:

> (1) Encourage and authorize the use of dispute resolution processes throughout this state to resolve disputes, cases, and controversies of all kinds. Such processes include, but are not limited to, negotiation, mediation, conciliation, arbitration, private judging, moderated settlement conferences, mediation-arbitration, fact finding, mini-trials, and summary jury trials;

With that in mind, we now turn to the circuit court's decision to disclose the confidential agreement. The circuit court correctly employed section 16-7-206(c) and performed an in camera review in response to RBC's assertion that discovery of the confidential settlement agreement arising out of mediation is necessary to allow it to

7

adequately prepare its defense. After the in camera review, the court determined that the confidential settlement agreement is subject to disclosure and found the following:

8. The Court finds that RBC was under the direction and control of API, and that, accordingly, RBC and API should be considered joint tortfeasors. The Court makes this finding over the objection of Kelley's attorney, who argued at the hearing that he believed that Court should hear and consider testimony to determine whether the defendants were joint tortfeasors and the other questions raised in Court of Appeals' opinion.

9. The Court does find that the document is relevant and that the right of contribution exists in this case. In reaching this conclusion, the Court notes that it does not believe that the damages that were caused by the general contractor (API) would be distinguished from the damages caused by the subcontractor (RBC), because the general contractor had control over the subcontractor. Again, the Court makes this finding over the objection of the Kelley's attorney, who argued at the hearing that he believed that Court should hear and consider testimony to determine whether the defendants were joint tortfeasors and the other questions raised in Court of Appeals' opinion. Further, Counsel for Kelley's argued that any concern over the potential of double recovery could be addressed with a jury instruction. The Court overrules Kelley's objections and finds that the right to contribution exists.

10. However, the Court cannot say at this point, at what point in the trial the right to contribution attaches, because this issue will likely arise as evidence is presented at trial.

The circuit court made no findings regarding the nature of the settlement or how disclosure will aid RBC in preparing a defense. Instead, the circuit court found that the confidential agreement is "relevant." The circuit court stated that "[e]ven though the court is not ruling that the right of contribution will arise at a precise point," it ordered Kelley's to produce the document. The circuit court also found that "the right of contribution exists in this case" but with the caveat that "the court cannot say at this point, at what point in the trial the right of contribution attaches, because this issue will likely arise as evidence is presented at trial." We disagree and reverse the circuit court's decision that the confidential settlement agreement is subject to disclosure at this time.

8

Here, the particular circumstance giving rise to the motion to compel production of the agreement is that API and Kelley's reached a confidential settlement agreement as a result of mediation. The circuit court made no finding as to RBC's need for the information requested (such as RBC's stated reason that it would help to "prepare a defense") except that the right of contribution *may* arise at some point in the litigation. The right to contribution is "derivative in nature, and the cause of action does not accrue until one joint tortfeasor pays more than his or her share of liability"; thus, the circuit court erred in determining that the right of contribution existed because no award of damages has occurred. *J-McDaniel Constr. Co. v. Dale E. Peters Plumbing Ltd.*, 2014 Ark. 282, at 3, 436 S.W.3d 458, 467; Ark. Code Ann. § 16-61-202(b). By determining that the right of contribution exists before a party has paid his or her fair share, the circuit court erred as a matter of law. An error of law in itself can constitute an abuse of discretion. *See Downum v. Downum*, 101 Ark. App. 243, 274 S.W.3d 349 (2008); *Ford Motor Co. v. Nuckolls*, 320 Ark. 15, 894 S.W.2d 897 (1995).

For the same reason, we find the circuit court erred in finding RBC and API were joint tortfeasors before the parties had a chance to present any evidence to the jury regarding tortfeasor status. The circuit court reasoned that because API is the main contractor and RBC is a subcontractor, they are joint tortfeasors. The court agreed with RBC and found that "it does not believe that the damages that were caused by the general contractor (APl) would be distinguished from the damages caused by the subcontractor (RBC), because the general contractor had control over the subcontractor."

Joint tortfeasors are defined as two or more persons or entities who may have joint liability or several liability in tort for the same injury to person or property. Ark. Code Ann.

9

§ 16-61-201. The operative word here is "may." The actual liability of the parties and the degrees thereof are issues to be decided by the jury. Neither we nor the circuit court can address that issue at this point because no evidence has been presented regarding the parties' possible joint-tortfeasor status, and when it is presented it will be for the jury to decide.

We also decline to hold, as urged by Kelley's, that the CJRA eliminated joint-tortfeasor status. Prior to the enactment of the CJRA, under joint and several liability, any and all of the joint defendants with a judgment against them were liable to the plaintiff for the entire judgment. *See Corn v. Farmers Ins. Co.*, 2013 Ark. 444, 430 S.W.3d 655. The CJRA modified the UCATA; however, even after the CJRA, a claim for contribution still exists regarding joint tortfeasors. *See* Ark. Code Ann. § 16-61-201. Contributory negligence and apportionment of fault are alive and well; thus, when two or more entities—through varying degrees of fault—"contribute" to another entity's damages, the parties may be referred to as "joint tortfeasors" without the consequence of joint liability.

The remaining issues of whether RBC is entitled to contribution, credit, or allocation of fault are similarly unripe for appeal because they are derivative questions for the jury to resolve.

Reversed.

HARRISON, SWITZER, and MURPHY, JJ., agree.

GRUBER, C.J., and VAUGHT, J., dissent.

**RITA W. GRUBER, Chief Judge, dissenting**. I respectfully dissent from the majority's decision to reverse this case. Fundamentally, this is an interlocutory appeal regarding a discovery dispute. Kelley's sued API and RBC alleging damages arising out of their negligent performance of a state highway construction contract. The circuit court

10

ordered the parties to attend mediation. Following the mediation, Kelley's and API entered into a confidential settlement agreement, which RBC seeks to discover and is now the subject of this interlocutory appeal.

The panel now agrees that the circuit court correctly employed Arkansas Code Annotated section 16-7-206(c) (Repl. 2010) by performing an in camera review of the confidential settlement agreement "to determine in camera whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure." While I agree with the majority that the General Assembly encourages alternative dispute resolution as a matter of public policy, I must point out that Arkansas Code Annotated section 16-7-206(c) provides a method for the trial court to examine the issue of disclosure of confidential communications or materials arising out of an alternative dispute resolution if section 16-7-206 conflicts with other legal requirements for disclosure. Providing such a method indicates the legislature's decision that communications or material arising out of an alternative dispute resolution may be subject to disclosure. Although we now all agree that the circuit court correctly employed Arkansas Code Annotated section 16-7-206(c) based on our facts and circumstances, I continue to disagree with the majority that the circuit court abused its discretion in ordering that the agreement was subject to disclosure in discovery.

Rule 26 of the Arkansas Rules of Civil Procedure governs discovery, and it allows for a broad investigation. In general, parties may obtain discovery regarding any matter, not privileged, that is relevant to the issues in the pending action. The goal of discovery is to permit a litigant to obtain whatever information he or she may need to prepare adequately

11

for issues that may develop without imposing an onerous burden on his adversary. *Poff v. Elkins*, 2014 Ark. App. 663, at 4, 449 S.W.3d 315, 318. A circuit court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed by this court absent an abuse of discretion that is prejudicial to the appealing party. *Loghry v. Rogers Grp., Inc.*, 348 Ark. 369, 373, 72 S.W.3d 499, 502 (2002); *see also Parker v. S. Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073, 1083, 935 S.W.2d 556, 561 (1996) (stating that the trial court's broad discretion in matters pertaining to discovery will not be "second-guessed" by the appellate court absent an abuse of discretion that is prejudicial to the appealing party). An abuse of discretion means a discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Valley v. Phillips Cty. Election Comm'n*, 357 Ark. 494, 498, 183 S.W.3d 557, 560 (2004). Discretion means that the rules are not inflexible, that there is some leeway in the exercise of sound judgment. *Id.*

In the 2017 interlocutory appeal, we held:

The issues of whether the parties are joint tortfeasors and, if so, at what point during litigation should disclosure be ordered are integral to deciding whether the confidential agreement may be disclosed; however, the circuit court declined to rule on the issue of contribution when it compelled discovery of the confidential settlement agreement arising out of the mediation, and disclosure of the document is in error without first determining when disclosure would be appropriate, if ever.

. . . .

Clearly, whether the document in question is relevant to RBC's defense must be based on the determination of whether the parties are joint tortfeasors, whether the right of contribution exists in this case and, if so, at what point in the trial the right of contribution attaches. We hold that the circuit court applied its discretion without due consideration by ordering disclosure of the document without first deciding the preliminary issues relating to contribution.

*Wynne-Ark., Inc. v. Richard Baughn Constr.*, 2017 Ark. App. 685, at 7–8, 545 S.W.3d 771, 775.

On remand, the circuit court answered the questions submitted by this court: (1) API and RBC should be considered joint tortfeasors; (2) the right of contribution *exists*; and (3) it could not determine at what point in the trial the right of contribution *attaches*. The majority holds that the circuit court erred as matter of law in its answers to the first two questions this court asked, and therefore abused its discretion in ordering disclosure of the confidential agreement.

First, I disagree with the majority's holding that API and RBC are not joint tortfeasors.

"'Joint tortfeasor' means two (2) or more persons or entities who may have joint liability or several liability in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them[.]" Ark. Code Ann. § 16-61-201(1) (Supp. 2019).[1] In its complaint against API and RBC, Kelley's asserted that "Defendants were engaged in the business of construction contracting and that the construction in question was performed in a negligent manner which was a proximate cause of Plaintiff's damages, property damage and loss of earnings. Plaintiff contends the

---

[1] A prior version, which was in effect until August 15, 2013, provided: "For the purpose of this subchapter the term 'joint tortfeasors' means two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them. Ark. Code Ann. § 16-61-201. The historical and statutory notes provide "It is the intent of the General Assembly that the rights afforded to joint tortfeasors by this act apply with equal force after the modification of joint and several liability as provided in § 16-55-201, and that none of the rights granted to joint tortfeasors by this act, including allocation of fault and credits for settlements entered into by other joint tortfeasors, shall be denied to joint tortfeasors." Ark. Code Ann. § 16-61-201 ACRC notes (Supp. 2019).

13

Defendants are liable to Plaintiff for the damages caused." In addition, the complaint alleged, "Plaintiff makes a demand against the Defendants, jointly and severally[.]" Kelley's' own allegations assert that API and RBC are joint tortfeasors—two entities who may have joint or several liability for Kelley's' alleged injury. It is for the jury to determine whether they are actually liable and to what extent.

Second, I disagree with the majority's holding that the circuit court erred as a matter of law "by determining that the right of contribution exists before a party has paid his or her fair share." The question we asked in the first interlocutory appeal was whether the right *exists*, and if so at what point it *attaches*, if ever. The majority states that "the circuit court made no findings as to RBC's need for the information requested (such as RBC's stated reason that it would help to 'prepare a defense') except that the right of contribution *may* arise at some point in the litigation." (Emphasis supplied.) The right to contribution is "derivative in nature, and the cause of action does not accrue until one joint tortfeasor pays more than his or her share of the liability." *J-McDaniel Constr. Co. v. Dale E. Peters Plumbing Ltd.*, 2014 Ark. 282, at 13, 436 S.W.3d 458, 467 (citing Ark. Code Ann. § 16-61-202(b)). However, a cause of action for contribution may be brought prior to any judgment based on the underlying tort. *See* Ark. Code Ann. § 16-61-207; *Heinemann v. Hallum*, 365 Ark. 600, 605–06, 232 S.W.3d 420, 424 (2006). In *Heinemann*, our supreme court stated:

> The UCATA in the Arkansas Code provides that "[a] joint tortfeasor is not entitled to a money judgment for contribution until he or she has by payment discharged the common liability or has paid more than his or her pro rata share thereof." Ark. Code Ann. § 16-61-202(2) (Repl. 2005). The act further permits a defendant claiming contribution to seek leave as a third-party plaintiff to bring someone into the original action who *may be a joint tortfeasor*. *See* Ark. Code Ann. § 16-61-207 (Repl. 2005). Thus, while a cause of action for contribution may be brought *prior* to any judgment based on the underlying tort, the question presented

14

at this point is: at what point does the contribution cause of action accrue and the statute of limitations begin to run?

*Heinemann*, 365 Ark. at 605–06, 232 S.W.3d at 424 (emphasis added).

In the present case, the day after the court-ordered mediation took place, RBC filed an amended answer and cross-claim against API seeking contribution and apportionment of fault. On January 26, 2017, the circuit court, upon being advised of the settlement, entered an order dismissing API without prejudice. *Heinemann* supports RBC's cross-claim for contribution despite the fact that the right to contribution had not yet attached. Based on the foregoing, I do not think the circuit court erred as a matter of law in determining that the right of contribution *exists*. Moreover, I think this supports the circuit court's finding that the settlement agreement is discoverable.

The ultimate question is whether the settlement agreement is relevant and discoverable. The parties have competing views. The court, in its order, found it was "relevant." The majority takes issue with the fact that the circuit court made no specific findings as to RBC's need for the information except that the right of contribution may arise at some point in the litigation. However, the majority fails to cite authority that specific findings are required and seems to raise the bar from whether the information is relevant to one of RBC's "need" for the information. Simply put, RBC is entitled to information on specific negligent acts and resulting damages attributable to it. In the complaint, Kelley's asserts that the "defendants" committed numerous negligent acts that caused its damages. Although Kelley's asserts that RBC's negligent acts and resulting damages were separate from those attributable to API, Kelley's complaint made a demand for damages "against the Defendants, jointly and severally."

As stated previously, the circuit court's broad discretion in matters pertaining to discovery will not be "second-guessed" by the appellate court absent an abuse of discretion that is prejudicial to the appealing party. *Parker*, 326 Ark. at 1083, 935 S.W.2d at 561. Here, Kelley's' argument that it will be prejudiced by the disclosure is weak at best. Kelley's argues in part that the amount of of damages for which RBC is liable can be determined by the jury "without the knowledge and terms of the Agreement between Kelley's and [API], or even that such an agreement exists." This argument relates only to whether the agreement is admissible at trial, which is not at issue on appeal. In arguing prejudice, Kelley's cites *Hasbrouck v. BankAmerica Housing Services*, 187 F.R.D. 453, 458 (N.D.N.Y.), for the proposition that to permit disclosure related to the confidential agreement "could force Kelley's to effectively relitigate the merits of its prior claim against [API]." Kelley's' reliance on *Hasbrouck* is misplaced because there, the confidential agreement sought to be discovered was between the plaintiff and a former employer in a completely separate case involving different facts. Not only are almost identical facts present in this case, but API is still a party to the case due to the cross-claim.

Based on the foregoing, I cannot say that the circuit court abused its discretion in ordering that the confidential settlement agreement is discoverable and would affirm.

VAUGHT, J., joins.

*David A. Hodges*, for appellant.

*Barber Law Firm PLLC*, by: *Michael J. Emerson*, for appellee.