SLIP OPINION

Cite as 2014 Ark. 282

# SUPREME COURT OF ARKANSAS

No. CV–13–950

J-MCDANIEL CONSTRUCTION
COMPANY, INC.; JOHN B.
MCDANIEL; and BARBARA G.
MCDANIEL

APPELLANTS

V.

DALE E. PETERS PLUMBING LTD.,
d/b/a DALE PETERS PLUMBING AND
IRRIGATION; ROBERT BOSTIC
HAULING AND EXCAVATING, INC.,
d/b/a BOBBY BOSTIC HAULING AND
EXCAVATING; ROBERT BOSTIC,
INDIVIDUALLY; and ESQUIRE
MARBLE COMPANY

APPELLEES

Opinion Delivered June 19, 2014

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT, SIXTH
DIVISION
[NO. CV-2009-7490]

HONORABLE TIMOTHY DAVIS
FOX, JUDGE

REVERSED AND REMANDED.

**CLIFF HOOFMAN, Associate Justice**

Appellants, J–McDaniel Construction Company, Inc., John B. McDaniel, and Barbara

G. McDaniel (collectively referred to as "McDaniel"), appeal from an order of the Pulaski

County Circuit Court granting summary judgment in favor of appellees, Dale E. Peters

Plumbing Ltd., d/b/a Dale Peters Plumbing and Irrigation ("Peters"); Robert Bostic Hauling

and Excavating, Inc., d/b/a Bobby Bostic Hauling and Excavating, and Robert Bostic

individually ("Bostic"); and Esquire Marble Company ("Esquire"). On appeal, McDaniel

argues that the circuit court erred by dismissing its third-party claims against appellees. We

have jurisdiction of this case pursuant to Ark. Sup. Ct. R. 1–2(a)(7) (2013), as this is a

subsequent appeal to this court. We reverse and remand.

McDaniel began construction on a new home in Little Rock in late 2005 and hired Peters, Bostic, and Esquire as subcontractors to complete certain tasks necessary to build the home. Peters installed plumbing; Bostic performed excavation, fill, compaction, and site-preparation work; and Esquire installed a shower in the master bedroom. Susan and David Conrad ("the Conrads") purchased the home from McDaniel on June 2, 2006. Shortly thereafter, the Conrads noticed several problems with the home, such as settlement cracks in the walls, misalignment of doors, and a foul odor in the master bathroom. The Conrads notified McDaniel, and some attempts were made by McDaniel and Peters to remedy the problems from fall 2006 through summer 2009.

After these attempts were unsuccessful, the Conrads filed a complaint in the Pulaski County Circuit Court against McDaniel on December 2, 2009, alleging negligence and breach of the implied warranties of habitability, sound workmanship, and proper construction. The Conrads later amended their complaint on November 16, 2010, to add claims of fraudulent transfer and to pierce the corporate veil of J-McDaniel Construction Company and hold Barbara and John McDaniel personally liable. The Conrads also alleged that due to an agreement with McDaniel, the statute of limitations had been tolled until December 2, 2009.

On December 23, 2009, McDaniel filed an answer and a third-party complaint against Peters and Bostic, asserting that any foundation problems with the Conrads' home were caused by an improperly connected shower drain in the master bathroom and faulty

excavation, fill, or site preparation. The complaint alleged breach of contract, negligence, and breach of the implied warranties of habitability, workmanlike performance, sound workmanship, and proper construction. McDaniel asked the court to enter judgment against Bostic and Peters for an amount equal to any and all liability that might be assessed against McDaniel as a result of the Conrads' complaint. McDaniel filed an amended third-party complaint on March 1, 2011, and added Esquire as a third-party defendant, asserting that it had improperly installed a marble shower in the master bathroom of the home. McDaniel also added claims against all third-party defendants for contribution and indemnity pursuant to common law and Ark. Code Ann. § 16-61-201.

On December 10, 2010, Peters filed a cross-claim against Bostic, seeking contribution, indemnity, and apportionment of fault pursuant to Ark. Code Ann. § 16-55-201. Bostic then filed a counter cross-claim against Peters, also seeking contribution, indemnity, and the right to apportionment of fault. On December 21, 2010, Bostic filed a motion for summary judgment on Peters's cross-claim, which the circuit court denied on March 9, 2011.

On April 20, 2011, Peters filed a motion for summary judgment, contending that it was entitled to judgment as a matter of law on the third-party complaint because the claims for negligence and for breach of contract were both barred by the statute of limitations, because McDaniel could not prove breach of a specific contractual term where the parties did not have a written contract, and because the implied warranties did not extend from McDaniel to Peters. On May 17, 2011, Bostic filed a motion for summary judgment on the third-party complaint and a motion for reconsideration of the denial of its motion for

summary judgment on Peters's cross-claim. Bostic argued that the claims for negligence, breach of contract, and breach of the implied warranties were time-barred; that McDaniel could not prove that Bostic had breached a specific term of the unwritten contract; that there is no implied warranty between a general contractor and a subcontractor; that equitable indemnity did not apply because this was an oral agreement without express terms; that Arkansas had abolished joint liability except in certain circumstances that were not applicable in this case; and that there is no general right to apportionment of fault. Bostic contended that because McDaniel had no valid claim against Bostic, it was also entitled to summary judgment on Peters's cross-claim. Subsequently, Peters filed a supplemental motion for summary judgment, which incorporated Bostic's arguments as to the third-party complaint.

On May 18, 2011, Esquire filed a motion for summary judgment, arguing that although McDaniel alleged a breach-of-contract claim against Esquire, any claim he had was for negligence; that the statute of limitations had run on any claim for negligence; that implied warranties of habitability, sound workmanship, and proper construction do not apply to the relationship between Esquire and McDaniel; that McDaniel was not entitled to indemnity where there was no express indemnity agreement; and that McDaniel was not entitled to contribution because the Civil Justice Reform Act of 2003 eliminated a claim for contribution, as a defendant is only required to pay its several share. On May 26, 2011, Peters filed a cross-claim against Bostic and Esquire, asserting that Peters was entitled to apportionment of fault, contribution, and indemnity. Both Bostic and Esquire answered the cross-claim and denied liability.

A hearing was held on the motions on May 27, 2011, and on August 22, 2011, the circuit court entered an order granting Peters's motion for summary judgment, Bostic's motion for reconsideration of the denial of its motion for summary judgment on Peters's cross-claim, and Esquire's motion for summary judgment. Peters, Bostic, and Esquire were dismissed with prejudice. The court did not state its reasons for granting the third-party defendants' respective motions. On December 19, 2011, the circuit court entered an order stating that the Conrads had settled their claims against McDaniel and that the matter was dismissed with prejudice. McDaniel filed a timely notice of appeal from the August 22 order. However, we dismissed the appeal for lack of a final, appealable order because there remained unresolved claims by McDaniel against Bostic, by Bostic against Peters, and by Peters against Esquire. *See J-McDaniel Constr. Co. v. Dale E. Peters Plumbing Ltd.*, 2013 Ark. 177.

After the appeal was dismissed, McDaniel filed a motion for reconsideration with the circuit court on June 14, 2013, arguing that the General Assembly's enactment of Act 1116 of 2013, which amended the Uniform Contribution Among Tortfeasors Act, made it clear that a cause of action for contribution still exists subsequent to the modification of joint and several liability, contrary to the assertions of the third-party defendants in this case. McDaniel also filed a notice of resolution of the Conrads' claims against McDaniel and an amended release and settlement agreement, wherein all claims by the Conrads against McDaniel, Bostic, Peters, and Esquire were released pursuant to payment of the settlement amount.

The circuit court did not specifically rule on McDaniel's motion for reconsideration and entered a final order on July 2, 2013, in which it granted Bostic's motion for summary

judgment on the third-party complaint and dismissed with prejudice all claims by McDaniel against Bostic; granted Bostic's motion for summary judgment on the cross-claim filed by Peters and dismissed with prejudice all claims by Peters against Bostic; granted Peters's motion for summary judgment on the third-party complaint and dismissed with prejudice all claims by McDaniel against Peters; granted Esquire's motion for summary judgment on the third-party complaint and dismissed with prejudice all claims by McDaniel against Esquire; dismissed with prejudice all counter cross-claims by all third-party defendants against one another; reaffirmed its prior order dismissing with prejudice all claims by the Conrads against McDaniel; and dismissing with prejudice any remaining claims by any and all parties. McDaniel filed a timely notice of appeal from this order on July 30, 2013.

McDaniel argues on appeal that the circuit court erred in granting appellees' motions for summary judgment and in dismissing its third-party complaint. Because McDaniel's second point on appeal concerning the applicability of Act 1116 of 2013 to this case also relates to whether its complaint was properly dismissed, these points will be discussed together.

Our law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *City of Farmington v. Smith*, 366 Ark. 473, 237 S.W.3d 1 (2006). Once the moving party has established a prima-facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary

SLIP OPINION

judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

In McDaniel's third-party complaint, it alleged causes of action for breach of contract; negligence; breach of the implied warranties of habitability, workmanlike performance, sound workmanship, and proper construction; and indemnity and/or contribution. Appellees argued in their summary-judgment motions that McDaniel's claims for breach of contract, negligence, and breach of implied warranties were time-barred because the three-year statute of limitations had expired as to these claims pursuant to Ark. Code Ann. § 16-56-105. On appeal, McDaniel does not contest the dismissal of these direct claims against appellees but instead focuses its argument on its derivative claims of contribution and indemnity, contending that these claims were erroneously dismissed by the circuit court.

Under the Uniform Contribution Among Tortfeasors Act ("UCATA"), Ark. Code Ann. §§ 16-61-201 et seq. (Repl. 2005), which was adopted in 1941, a right of contribution exists among joint tortfeasors. *See* Ark. Code Ann. § 16-61-202(1). "Joint tortfeasors" are defined as two or more persons who are jointly or severally liable in tort for the same injury. Ark. Code Ann. § 16-61-201. "A joint tortfeasor is not entitled to a money judgment for contribution until he or she has by payment discharged the common liability or has paid more than his or her pro rata share thereof." Ark. Code Ann. § 16-61-202(2). However, pursuant

to Ark. Code Ann. § 16-61-207, a defendant seeking contribution in a tort action is not required to wait until he or she has paid the judgment to implead in the primary action other persons who are or may be liable to the defendant for all or part of the plaintiff's claim against the defendant. *See also* Ark. R. Civ. P. 14 (2013). Arkansas Code Annotated section 16-61-206 further provides that the Act does not impair any right to indemnity under existing law.

In response to McDaniel's argument that it has a valid claim against appellees for contribution and/or indemnity due to the damages sought by the Conrads, appellees first contend that this third-party claim is moot because the Conrads' complaint against McDaniel was dismissed with prejudice by the circuit court after the Conrads had reached a voluntary settlement with McDaniel.[1] Citing *Martin Farm Enterprises, Inc. v. Hayes*, 320 Ark. 205, 895 S.W.2d 535 (1995), appellees assert that the dismissal of the primary complaint renders a third-party complaint moot. However, in *Martin Farm*, the third-party complaint was moot because the defendant's summary-judgment motion in the primary action was granted, and there was no longer any liability on the part of the defendant for which a derivative claim for contribution could exist. In this case, the Conrads settled their claims against McDaniel, and the complaint was dismissed at the request of these two parties. Thus, McDaniel's third-party complaint for contribution and/or indemnity is not moot. In fact, Arkansas Code Annotated

---

[1]Appellee Peters also contends as part of its mootness argument that McDaniel is seeking a remedy that it would not have been entitled to if it had not voluntarily settled the lawsuit. However, Peters fails to develop this argument or to cite any authority in support, and because it is not apparent without further research that it is well taken, it will not be considered on appeal. *Webb v. Bouton*, 350 Ark. 254, 85 S.W.3d 885 (2002).

SLIP OPINION

section 16-61-202 specifically provides for a contribution claim if or when one tortfeasor has entered into a settlement with the injured person, as long as the other joint tortfeasor's liability to the injured person is extinguished by the settlement, which will be discussed further below.

Appellee Esquire also argues, as a preliminary matter, that McDaniel's arguments on appeal cannot be addressed because the circuit court did not make specific findings in its order granting appellees' motions for summary judgment. However, in the case that Esquire cites for this proposition, *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, 427 S.W.3d 651, we declined to address the merits of several grounds for dismissal that were raised in appellees' motion to dismiss where the circuit court had ruled on only one of the grounds in its order. Here, the circuit court made no specific findings in its order granting appellees' motions for summary judgment and instead generally granted the motions; thus, the circuit court could have based its ruling on any of the grounds that had been raised. Under Ark. R. Civ. P. 52(a) (2013), findings of fact and conclusions of law are not necessary on decisions of motions. There is therefore no merit to Esquire's contention that McDaniel's arguments on appeal are not preserved due to the failure of the circuit court to make specific findings.

In their next argument in response to McDaniel's assertion that the circuit court improperly dismissed its valid claim for contribution, appellees contend that McDaniel's claim for contribution is no longer cognizable subsequent to the enactment of the Civil Justice Reform Act of 2003 ("CJRA"), which abolished joint liability in all civil actions. *See* Ark. Code Ann. § 16-55-201 et seq. (Supp. 2013). Because McDaniel would be liable for only his proportionate share of fault under the CJRA, appellees argue that a claim for contribution

SLIP OPINION

is not necessary under the facts of this case. As support for this contention, appellees cite to this court's opinion in *St. Vincent Infirmary Med. Ctr. v. Shelton*, 2013 Ark. 38, 425 S.W.3d 761, where we affirmed the circuit court's dismissal of a third-party complaint for failure to state a claim based on the abolition of joint liability under the CJRA. However, as McDaniel argues, and as it asserted below in its motion for reconsideration subsequent to this court's dismissal of the first appeal, the General Assembly has since passed Act 1116 of 2013, which clarified that a claim for contribution pursuant to the UCATA still exists after the 2003 enactment of the CJRA. Thus, to the extent that the holding in *Shelton*, *supra*, conflicts with the Act, it has been effectively overruled by Act 1116.

While appellees recognize the recent enactment of Act 1116, they first contend that McDaniel failed to obtain a ruling on the applicability of the Act to this case because the circuit court did not expressly rule on McDaniel's motion for reconsideration. However, while it is well settled that a party must raise an argument below and obtain a ruling in order to preserve that specific issue for appeal, we have never required that a party obtain a ruling by the circuit court as to whether a particular case or statute offered in support of the party's argument applies to the facts of that party's case. *See Gilliland v. State*, 2010 Ark. 135, 361 S.W.3d 279 (stating that an appellant does not have to cite to specific rules to preserve an evidentiary argument for appeal but that a specific objection is necessary to apprise the trial court of the error alleged). Furthermore, we note that McDaniel cited to the UCATA in its complaint and that it was the appellees who asserted that the right to contribution under the UCATA had been abrogated by the passage of the CJRA. McDaniel's citation to Act

1116, which clarified that the UCATA was still applicable to such claims for contribution, was offered to rebut appellees' assertions in their motions for summary judgment and was made prior to the circuit court's final order. As noted above, the circuit court's grant of summary judgment was a general ruling that could have been based on any of the arguments that were raised by the parties in their motions and responses. Thus, appellees' argument that we may not consider the applicability of Act 1116 to this case due to the failure of McDaniel to obtain a ruling is not persuasive.

Appellees next contend that, even if the issue is preserved for appeal, Act 1116 does not control this case because the Act should not be applied retroactively. This court discussed the issue of retroactivity of legislative acts in *Steward v. Statler*, 371 Ark. 351, 266 S.W.3d 710 (2007):

> Generally, retroactivity is a matter of legislative intent, and unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively. Any interpretation of an act must be aimed at determining whether retroactive effect is stated or implied so clearly and unequivocally as to eliminate any doubt. In determining legislative intent, we have observed a strict rule of construction against retroactive operation and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it, to operate prospectively only and not retroactively. However, this rule does not ordinarily apply to procedural or remedial legislation.
>
> The strict rule of construction does not apply to remedial statutes that do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. Procedural legislation is more often given retroactive application. The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed. Although the distinction between remedial procedures and impairment of vested rights is often difficult to draw, it has become firmly established that there is no vested right in any particular mode of procedure or remedy. Statutes which do not

create, enlarge, diminish, or destroy contractual or vested rights, but relate only to remedies or modes of procedure, are not within the general rule against retrospective operation. In other words, statutes effecting changes in civil procedure or remedy may have valid retrospective application, and remedial legislation may, without violating constitutional guarantees, be construed to apply to suits on causes of action which arose prior to the effective date of the statute.

*Id.* at 353–54, 266 S.W.3d at 713 (internal citations omitted).

Applying these principles to the present case, it is clear that Act 1116 was intended by the General Assembly to have retroactive effect. According to the stated purpose of the Act, which became effective on August 16, 2013,

> It is the intent of the General Assembly that the rights afforded to joint tortfeasors by this act apply with equal force after the modification of joint and several liability as provided in § 16-55-201, and that none of the rights granted to joint tortfeasors by this act, including allocation of fault and credits for settlements entered into by other joint tortfeasors, shall be denied to joint tortfeasors."

Act of Apr. 11, 2013, No. 1116, § 1, 2013 Ark. Acts 4345, 4346. Furthermore, the Act also states that, "This act is remedial in nature and applies to all causes of action accruing on or after March 25, 2003." *Id.* § 8, 2013 Ark. Acts at 4348. Not only did the legislature expressly state that Act 1116 was to have remedial effect, the statutory provisions at issue in this case, which provide for a right to contribution, remain essentially unchanged from their prior versions. It is apparent that any changes that were made pursuant to Act 1116 were only procedural in nature, contrary to the assertions of appellees. *See Steward, supra.* Thus, as McDaniel argues, Act 1116 is retroactive and applicable to this case.

Based on Act 1116, McDaniel's claim for contribution remains a valid cause of action subsequent to the enactment of the CJRA. Also, as McDaniel argued in its responses to

appellees' summary-judgment motions, the right to contribution and/or indemnity is derivative in nature, and the cause of action does not accrue until one joint tortfeasor pays more than his or her share of liability. Ark. Code Ann. § 16-61-202(b). Similarly, the statute of limitations on a claim for contribution or indemnity does not begin to run until payment is made. *Heinemann v. Hallum*, 365 Ark. 600, 232 S.W.3d 420 (2006); *Ray & Sons Masonry Contractors, Inc. v. U.S. Fidelity & Guar. Co.*, 353 Ark. 201, 114 S.W.3d 189 (2003). Thus, McDaniel's derivative claims were not time-barred. While Appellees argued that McDaniel does not have a valid claim for contribution because they could not be liable to the Conrads due to the running of the statute of limitations, this same argument was rejected in *Schott v. Colonial Baking Co.*, 111 F. Supp. 13 (W.D. Ark. 1953). The court in *Schott* stated that under the UCATA, "the common obligation contemplated by this Act is the common liability of the tortfeasors to suffer adverse judgment at the instance of the injured person, whether or not the injured person elects to impose it." *Id.* at 24. Thus, even though no common liability existed at the time of the third-party claim in that case, the appellee still had a contribution action against the other joint tortfeasor. *Id.* Appellee Bostic argues that this case is no longer persuasive authority in light of the abolition of joint liability; however, Bostic cites no authority for this proposition, and in light of Act 1116, this argument is without merit.

In their final argument in response to McDaniel's assertion that the circuit court erroneously dismissed its claim against appellees for contribution, appellees contend that under Ark. Code Ann. § 16-61-202(d), McDaniel's settlement with the Conrads must have also extinguished their liability to the Conrads in order for the claim of contribution to survive.

13

SLIP OPINION

The details of the original 2011 settlement in this case were not included in the record; however, after this court's dismissal of the parties' first appeal, McDaniel filed a notice of resolution and an amended settlement agreement, in which the Conrads expressly released all the appellees from further liability. Appellees first argue with respect to this amended settlement agreement that it cannot be considered by this court because there was no ruling by the circuit court on this agreement. However, appellees do not indicate what relief McDaniel was requesting by filing this voluntary agreement or what ruling should have been given by the circuit court. The notice and amended agreement were filed prior to the circuit court's final order dismissing McDaniel's third-party complaint, and the court noted in this order that all claims by the Conrads against McDaniel had been previously dismissed with prejudice. Thus, no ruling was necessary with regard to this amended settlement agreement.

Appellees also argue that this 2013 amended settlement agreement was void because it was executed without any further consideration. In response, McDaniel asserts that the agreement expressly states that mutual consideration was provided and that "other good and valuable consideration [was] exchanged, the receipt and sufficiency of which is hereby acknowledged . . . . " However, because the circuit court's initial August 2011 order dismissing McDaniel's third-party complaint was entered prior to the parties' settlement, the issues surrounding the effect of both the original and amended settlement agreements on McDaniel's claim for contribution were not raised in appellees' motions for summary judgment and were not considered by the circuit court. Thus, material issues of fact remain to be decided on this issue that render the circuit court's grant of summary judgment

14

improper.

Similarly, although appellee Bostic asserts that McDaniel made "pivotal admissions" regarding its liability for the defects in the Conrads' home that would prevent any claims against it, McDaniel correctly argues that there are unresolved questions of fact that are raised in this regard by Peters's cross-claim, as well as by a civil engineer who was hired to inspect the home. We therefore reverse and remand the circuit court's dismissal of McDaniel's contribution claim.

With regard to McDaniel's indemnity claim, appellees contend that summary judgment was properly granted because there were no written contracts between McDaniel and the subcontractors, and thus, no express indemnity clauses. McDaniel argues, however, that a claim for indemnity can be based on an implied or quasi-contract and that equitable indemnity can also exist where there is a special relationship between the parties, such as where an indemnitor breached a duty owed to the indemnitee. *See Larson Machine, Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980). In *Larson*, this court explained that "[i]t has been appropriately said that the doctrine of indemnity is based upon the equitable principles of restitution which permit one who is compelled to pay money, which in justice ought to be paid by another, to recover the sums so paid unless the payor is barred by the wrongful nature of his own conduct." *Id*. at 213-14, 600 S.W.2d at 12.

McDaniel admits that there were no express indemnity clauses between it and appellees in this case but argues that it had longstanding relationships with both Bostic and Peters that could give rise to implied indemnity. While McDaniel correctly notes that there are no

15

Arkansas cases holding that there is a "special relationship" between a contractor and subcontractor sufficient to form the basis of a claim for equitable indemnity, it cites cases from other jurisdictions that have found such a relationship to exist. *See, e.g.*, *First Gen. Servs. of Charleston, Inc. v. Miller*, 445 S.E.2d 446 (S.C. 1994); *Noble Steel, Inc. v. Williams Brothers Concrete Constr. Co.*, 49 P.3d 766 (Okla. Civ. App. 2002); *Stonegate Homeowners Assoc. v. Staben*, 144 Cal. App. 4th 740 (2006). We agree with McDaniel that unresolved questions of fact remain surrounding the extent and nature of the relationship between McDaniel and appellees and whether this relationship could give rise to a claim for equitable indemnity.

Appellees further argue that McDaniel's voluntary settlement with the Conrads prevents it from pursuing a claim for indemnity from them. Citing *Carpetland of NWA, Inc. v. Howard*, 304 Ark. 420, 803 S.W.2d 512 (1991), appellees contend that the right to indemnity is extinguished when the indemnitee voluntarily settles the underlying claim and that McDaniel has the burden to prove that the settlement was made under a legal compulsion rather than made as a mere volunteer. However, as discussed above with regard to the claim for contribution, the circumstances surrounding McDaniel's settlement and amended settlement with the Conrads were not raised in appellees' motions for summary judgment, nor were they considered by the circuit court in its decision to dismiss the third-party complaint. Because there remain unresolved issues of fact regarding whether McDaniel has a right of indemnity against appellees under the facts in this case, we reverse and remand the circuit court's dismissal of this claim as well.

Reversed and remanded.

Cite as 2014 Ark. 282

*Dover Dixon Horne PLLC*, by: *Wm. Dean Overstreet* and *Thane J. Lawhon*, for appellants.

*Friday, Eldredge & Clark, LLP*, by: *James C. Baker, Jr.*, and *Jamie Huffman Jones*, for appellees Robert Bostic Hauling and Excavating, Inc., and Robert Bostic.

*Matthews, Sanders & Sayes*, by: *Doralee Chandler* and *Roy Gene Sanders*, for appellee Esquire Marble Company.

*The Barber Law Firm*, by: *Micheal L. Alexander* and *Rick Behring, Jr.*, for appellee Dale E. Peters Plumbing Ltd.