Cite as 2024 Ark. App. 231

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-22-211

| | |
|---|---|
| TRACEY SCOTT AND LORRENZO HAMPTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>APPELLANTS<br><br>V.<br><br>REVCLAIMS, LLC; AND ST. BERNARDS HOSPITAL, INC.<br>APPELLEES | Opinion Delivered April 3, 2024<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. 16JCV-19-912]<br><br>HONORABLE MELISSA BRISTOW RICHARDSON, JUDGE<br><br>REVERSED AND REMANDED |

**MIKE MURPHY, Judge**

Tracey Scott ("Scott") and Lorrenzo Hampton ("Hampton") (collectively "appellants") received medical treatment with appellee, St. Bernards Hospital, Inc. ("St. Bernards"), following an automobile accident with a third party. At the time, appellants were both insured by Arkansas Blue Cross Blue Shield ("BCBS") and authorized St. Bernards to bill BCBS directly for their medical care. St. Bernards and appellee, RevClaims, LLC ("RevClaims") (collectively "appellees"), declined to bill BCBS for either of appellants' medical care. Instead, appellees sought the full amount of appellants' medical bills from them and the party at fault in the auto accident. Appellants both negotiated with and paid the agreed amounts to RevClaims for their respective medical bills with St. Bernards.

Appellants filed a class-action complaint alleging claims for breach of contract, breach of contract as a third-party beneficiary, violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), unjust enrichment, and breach of fiduciary duty. Appellants claimed that appellees' refusal to bill BCBS directly for their medical care constituted a violation of St. Bernards' billing policies and Arkansas law. Before discovery had begun, RevClaims filed a motion for summary judgment against appellants. Appellants responded by requesting that the circuit court allow them to conduct discovery before fully responding to the motion, and they voluntarily dismissed their claims against RevClaims for breach of contract, breach of contract as a third-party beneficiary, and breach of fiduciary duty. The circuit court denied RevClaims' motion for summary judgment on the ADTPA and unjust-enrichment claims to allow for discovery to proceed.

Nine days later, St. Bernards moved for summary judgment. Appellants filed a motion to compel discovery from St. Bernards. Appellants then responded to St. Bernards' motion for summary judgment, objecting to the motion and arguing that they should be entitled to conduct discovery before fully responding to the hospital's motion. St. Bernards responded to appellants' motion to compel, arguing that discovery should not be required until the circuit court ruled on its first motion for summary judgment. St. Bernards then filed a second motion for summary judgment and motion to dismiss.

The circuit court conducted a hearing solely on St. Bernards' first motion for summary judgment. Following the hearing, the court entered an agreed order granting appellants an extension of time to respond to St. Bernards' second motion twenty-one days

2

after the court's entry of an order on St. Bernards' first motion for summary judgment. The circuit court subsequently entered an order dismissing appellants' claims with prejudice on the basis of the arguments in St. Bernards' second motion finding it was unnecessary to rule upon St. Bernards' first motion.

Appellants appealed the circuit court's order. This court dismissed appellants' appeal without prejudice, finding that the circuit court's July 13, 2020, order was not a final, appealable order because the circuit court's order of dismissal did not address appellants' claims against all parties. The circuit court then entered judgment in favor of appellees against the appellants. It is from this order appellants filed the present appeal. We reverse and remand to allow appellants to conduct discovery sufficient to enable them to fully respond to appellees' motions for summary judgment and motion to dismiss.

I. *Factual Background*

Appellants were involved in a motor vehicle accident on April 2, 2015, and both sought medical care at St. Bernards emergency room on April 4 for back pain. Appellants were both insured by BCBS and authorized St. Bernards to bill BCBS directly for their medical care. Appellants pursued the at-fault party from the motor vehicle accident and recovered a confidential settlement. Appellants advised St. Bernards to bill BCBS for their medical care. Appellees refused to bill BCBS for appellants' medical care and gave notice to appellants that appellees intended to collect the full amount of the medical costs from appellants directly. Appellants both eventually negotiated with RevClaims and paid the agreed amounts for their respective medical bills with St. Bernards.

3

Appellants filed a class-action lawsuit against appellees before the U.S. District Court for the Eastern District of Arkansas. The Eastern District sua sponte conducted an inquiry into its subject-matter jurisdiction and dismissed the action without prejudice for lack of subject-matter jurisdiction. On August 21, 2019, appellants filed the present action in the Circuit Court of Craighead County.

Appellants alleged that appellees' refusal to bill BCBS directly for their medical care constituted a violation of St. Bernards' billing policies and Arkansas law. Appellants asserted a class action against appellees alleging that multiple common questions of law and fact existed as to all class members. Appellants' first cause of action for breach of contract was based on appellees' billing them directly instead of billing BCBS and charging them rates in excess of the agreed BCBS reimbursement rates. Appellants' second cause of action contended that appellees violated the ADTPA by refusing to bill their insurers and instead billing them at rates higher than the contracted reimbursement rates set by BCBS. Appellants described the above conduct by appellees as unconscionable, false, and deceptive and alleged that through these actions, appellees engaged in fraud and deceit by making untrue statements of fact and omitting material facts.

Appellants' third cause of action for unjust enrichment claimed that appellees were not permitted to collect any bill from an insured patient unless appellees first submitted insurance claims on the patients' behalf. Appellants further claimed if appellees failed to file their insurance claims within 180 days, appellees were prevented from collecting on those bills. Appellants asserted that appellees were prohibited from beginning collection actions

4

against patients when the hospital failed to first submit the medical bills to the insurer. Appellants further argued appellees were unjustly enriched by refusing to submit patient medical claims to their requisite insurers and instead billing patients in amounts in excess of the contractually negotiated rates. Appellants' fourth cause of action for breach of fiduciary duty asserted that appellees held the role of attorney-in-fact under the assignment agreement executed by appellants as a party of the admission agreement. Appellants contended appellees breached their fiduciary duty by communicating false information to them about the amount of charges owed, billing them in excess of the contractually negotiated rates in the provider agreement, and failing to refund the amounts received in excess of the contractually negotiated rates.

On September 23, 2019, RevClaims and St. Bernards both filed answers to appellants' class-action complaint. St. Bernards filed an amended answer on October 2. The parties entered an agreed protective order on October 3. On October 15, RevClaims filed a motion for summary judgment and brief in support. RevClaims argued that it is not a medical provider but instead is a company that contracts with medical providers to assist with the identification of parties that may be liable for medical care provided to third parties. RevClaims stated that under its service agreement with St. Bernards, it had no duty to file health insurance claims on behalf of patients.

RevClaims alleged that it spoke to appellants to identify third parties that could be liable for appellants' medical bills with St. Bernards resulting from the accident at issue. RevClaims filed a hospital lien on behalf of St. Bernards in relation to Scott's medical claims,

5

which was not renewed, and expired on December 16, 2015. RevClaims stated that no lien was filed for Hampton's medical bills. After appellants negotiated a settlement with the liable third party's insurance carrier, and after the Scott hospital lien had expired, appellants negotiated with RevClaims for discounts on St. Bernards' bills.

RevClaims argued that appellants' breach-of-contract claims failed because RevClaims was not a party to the St. Bernards' admission agreement between appellants and St. Bernards and was not in privity of contract with appellants. RevClaims asserted that because it had no obligation to file appellants' health insurance claims, appellants' ADTPA and unjust-enrichment claims must fail. RevClaims disputed that its correspondence with appellants' counsel constituted a demand for payment or a deceptive consumer-oriented act or practice. RevClaims further claimed that appellants failed to identify any other actions by RevClaims that supported an ADTPA claim.

RevClaims further argued that appellants' claims for unjust enrichment must fail because it exercised a legal right in filing the medical lien on behalf of St. Bernards against Scott. RevClaims further noted that appellants had provided no proof that RevClaims had been involved in any wrongdoing. Finally, RevClaims asserted that it owed no fiduciary duty to appellants because RevClaims had no duty to and accepted no property from or had any relationship with or related to appellants. Furthermore, RevClaims claimed an insurance-assignment agreement was insufficient to create a fiduciary relationship.

Appellants filed their response and brief in support to RevClaims' motion for summary judgment on November 7. Appellants agreed to dismiss their claims against

6

RevClaims for breach of contract and breach of fiduciary duty but continued to assert the remaining claims for violations of the ADTPA and unjust enrichment. Appellants continued to claim that appellees' refusal to submit appellants' medical bills to BCBS within 180 days of their treatment was a violation of St. Bernards' billing policy and Arkansas law. Appellants argued that RevClaims' contract with St. Bernards contained billing prohibitions sufficient to defeat summary judgment. Appellants alleged that they were receiving collection letters from appellees and were required to pay the full amount of their bills from appellees in order to resolve their third-party-liability claim. Finally, appellants noted that discovery had just begun and requested the opportunity to conduct discovery in the event the court was entertaining RevClaims' motion.

RevClaims contended in its reply that it had no duty to, and was actually prohibited from, billing BCBS for appellants' medical bills. RevClaims further argued that appellants were not compelled to pay any amounts, but instead, appellants' former counsel voluntarily negotiated a reduction in appellants' medical bills. RevClaims pointed out that the medical lien for Scott's medical bills had already expired at the time appellants negotiated a reduction in their medical bills, so nothing inhibited the settlement or distribution of appellants' settlement proceeds. On December 26, RevClaims filed a supplemental brief in support of summary judgment requesting that the circuit court alternatively dismiss appellants' claims pursuant to Ark. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.

Appellants filed their first amended class-action complaint dropping the breach-of-contract claims against RevClaims. The circuit court conducted a hearing on December 17, 2019, on RevClaims' motion for summary judgment. Appellants noted that they had not received any discovery in the case from any appellee and thus were asking the court to allow discovery to proceed. Appellants argued that regardless of whether a valid lien existed at the time they paid RevClaims, the medical bills still existed and were still due and payable regardless of the status of the lien. Appellants suggested that the reduced amount received by RevClaims was significantly more that St. Bernards could have collected for appellants' medical care from BCBS.

Appellants claimed that they had some information to support the who, what, when, and where for the ADTPA claim but that allowing discovery would enable them to answer those questions more thoroughly. Appellants argued that without discovery from any appellee they could not determine whether or to what extent RevClaims was involved in or exercised discretion in the decisions by or with St. Bernards on filing claims with a patient's insurer.

On January 14, 2020, the circuit court denied RevClaims' motion for summary judgment to allow for discovery to proceed. On January 23, St. Bernards filed a motion for summary judgment and its statement of undisputed facts arguing primarily that appellants' failure to file their own health insurance claims led to their purported damages. St. Bernards asserted that BCBS's policies allowed appellants to file their own insurance claims within 180 days after the date of service. St. Bernards further claimed appellants did not question

the validity of their medical bills until after voluntarily remitting payment on those bills well after the expiration of the 180-day deadline. St. Bernards asserted that its admission agreement did not require it to bill insurance for the services rendered to appellants.

St. Bernards attempted to distinguish *Mounce v. CHSPSC, LLC*, No. 5:15-CV-05197, 2017 WL 4392048, at *8 (W.D. Ark. Sept. 29, 2017), from the present action on the basis of the language in the assignment of benefits. In *Mounce*, the assignment of benefits stated that "I understand that I am responsible for any charges not covered by my insurance company." St. Bernards' admission agreement stated that the patient "shall be personally responsible for any and all charges not paid pursuant to the above assignment of insurance benefits." St. Bernards noted that, unlike *Mounce*, appellants had not provided any evidence that anyone at St. Bernards agreed to bill BCBS for appellants' medical treatment.

St. Bernards further claimed that appellants could not contend they relied on St. Bernards' website as a basis for their ADTPA claims. St. Bernards argued that appellants failed to assert that they were required to pay the lien to preserve their rights to the third-party insurance proceeds. St. Bernards claimed that RevClaims never asserted a lien against Hampton's insurance proceeds and, as such, could not have impaired his third-party-liability claim. Like RevClaims, St. Bernards noted that appellants requested a reduction of their medical bills after the medical lien expired. St. Bernards further stated that appellants never requested or demanded release of Scott's medical lien. For all those reasons, St. Bernards asserted that appellants could not establish that they paid RevClaims to prevent the medical lien from tying up their settlement proceeds.

9

Attached as exhibit B to St. Bernards' motion was a section of the September 2008 BCBS *Providers' News* publication titled "Provider 'Third Party Liability' or 'Subrogation' Activities and Member Claims." St. Bernards relied on the following statement in numbered paragraph 5 of the article: "Providers are also reminded that while they may elect not to file a claim, members may still file the claim with Arkansas Blue Cross or Health Advantage. . . ." The article reminded providers that they were obligated to comply with all BCBS claim-filing procedures, including those published in *Providers' News*. The article recognized in paragraph 2 that providers were not required to file all claims with BCBS but doing so was strongly encouraged.

On February 14, appellants filed their motion to compel adequate discovery responses from St. Bernards. Appellants noted that St. Bernards objected to each request, arguing that the hospital would be filing a motion to dismiss that would render appellants' discovery requests moot. St. Bernards further objected to most requests as "ambiguous, irrelevant, overbroad, and oppressive." Appellants attached a December 18, 2019, email from St. Bernards wherein the hospital agreed to supplement its discovery responses specific to appellants' claims. However, appellants noted that St. Bernards supplemented its responses providing documents that were generally insufficient or irrelevant to appellants' claims. Appellants argued that they were entitled to adequate discovery to respond to St. Bernards' motion for summary judgment.

Appellants claimed in their response to St. Bernards' motion for summary judgment that the admission agreement they both signed with St. Bernards stated that the patient

10

would be personally responsible for any and all charges not paid pursuant to the assignment of insurance benefits. Appellants asserted that they owed St. Bernards nothing because the hospital and RevClaims did not submit their claims to BCBS within the required six-month period as requested. Appellants further asserted that they had no choice but to pay the St. Bernards' medical bills because the appellees had filed a lien.

Appellants argued that St. Bernards' policies stated that the hospital would submit all patient bills to the requisite insurers. Appellants disputed St. Bernards' suggestion that patients shouldered the burden to ensure their insurance claims had been filed with BCBS. Appellants contended that appellees were required to submit their bills to BCBS before attempting to recover any amounts from them, and relying on the September 2008 *Providers' News* article, appellees could bill them only for copays, coinsurance, or deductibles. Appellants also relied on the testimony of BCBS employee, Benjamin Butler, who was deposed in *Mounce*, *supra*. Mr. Butler specifically testified that a BCBS insured would owe a medical provider a copay, coinsurance, or deductible only if the provider filed a claim with BCBS. Mr. Butler further testified that if the provider failed to file a claim with BCBS, the provider could not recover any sums from the BCBS insured.

Appellants argued that appellees, by entering into the provider agreement with BCBS, contracted away their right to pursue a lien against insured patients for their medical bills. Appellants contended the holding in *Stuttgart Regional Medical Center v. Cox*, 343 Ark. 209, 33 S.W.3d 142 (2000), was inapplicable to the present action because the patient in *Cox* failed to present any evidence to support his argument that the hospital was required to

11

collect from the patient's insurance company first. Appellants contended that in *Cox*, the court had no way of determining the benefits available or any prohibitions on the medical provider regarding the collection of payments from the insured.

Furthermore, appellants claimed that, in addition to *Mounce*, *supra*, the majority of other jurisdictions had concluded that a medical provider is contractually obligated to file a patient's claim with his or her medical insurance provider before seeking to recover from the patient. Appellants argued that the BCBS provider agreement, the insurance plan, and the admission agreement, taken together, prevented appellees from billing insured patients without first billing their medical insurance provider.

Appellants attached as exhibit C the St. Bernards' patient information guide, which states in the section titled "Information About Your Patient Account" that "[a]s a courtesy to you, the business office will bill your insurance." The section further stated, "We will contact your insurance and follow up on your claim as often as necessary. . . . This includes following policy guidelines for pre-authorization and payment of deductibles and co-insurance." Under the "Financial Information" section, "Insurance" subsection, the document states that "[a]s a courtesy to you, the Business office will bill and follow up with your insurance."

Appellants attached as exhibit I the March 2008 BCBS *Providers' News* newsletter. On page 11 of the newsletter is an article titled "Arkansas Blue Cross and Blue Shield and Health Advantage Coverage for Services Rendered to a Member Injured in an Accident." BCBS directly addressed whether BCBS-contracted medical providers should bill the auto

12

insurance or third-party providers first in lieu of filing claims under the BCBS plans for injuries sustained by BCBS-insured patients involved in auto accidents:

> Such statements are incorrect with respect to health insurance issued by Arkansas Blue Cross and Blue Shield and health plans provided by Health Advantage.
>
> Arkansas Blue Cross and Health Advantage contracts provide coverage regardless of the reason a member receives health services and regardless of other possible payers for such services. (Arkansas Blue Cross and Health Advantage health plans coordinate benefits with other insurers and assert contractual subrogation rights against liable third parties.)
>
> Health care providers providing services to members covered by Arkansas Blue Cross or Health Advantage health plans should not wait to file claims, regardless of the cause of the member's illness or injury. Delay in filing could result in a claim being denied for lack of timely filing.

Appellants also attached the September 2008 BCBS *Providers' News*, which further addressed the issue. The article titled "Provider 'Third Party Liability' or 'Subrogation' Activities and Member Claims" reminded providers that they were obligated to comply with all BCBS claim-filing procedures, including those published in *Providers' News*. The article recognized that providers were not required to file all claims with BCBS, but doing so was strongly encouraged. The article reminded providers that despite the state lien law, the provider agreements with BCBS prohibited providers from pursuing the insureds for any amounts in excess of the BCBS or Health Advantage payment, which included deductibles, coinsurance, or copayments.

The article stated: "Any attempt to bill the member or collect against the member or their assets for Covered Services will be deemed a violation of the network participation agreement." The article further declared that if a provider waits more than 180 days to file

13

a claim with BCBS, "providers cannot thereafter bill either the member or Arkansas Blue Cross or Health Advantage for any amount on such claims." The article reminded providers that if they are participating providers in the BCBS or Health Advantage networks, they "*cannot pursue the member* for amounts beyond the Arkansas Blue Cross or Health Advantage payments." (Emphasis in original.)

Appellees filed a response to appellants' motion to compel, objecting to engaging in time-consuming phase-one class discovery before the court ruled on its motion for summary judgment. On March 4, St. Bernards filed a motion to dismiss and/or second motion for summary judgment and brief in support. St. Bernards reasserted its positions contained in its first motion for summary judgment and further argued that the "voluntary payment rule" barred all of appellants' common-law and contractual claims because appellants voluntarily paid St. Bernards without protest or objection, had knowledge of the 180-day deadline to file a claim with BCBS, and received a 15 percent reduction of their bills.

St. Bernards also claimed that appellants' third-party breach-of-contract and unjust-enrichment claims should be dismissed because appellants were not third-party beneficiaries to St. Bernards' provider agreement with BCBS as specifically set forth in the provider agreement.[1] St. Bernards also contended that appellants' breach-of-contract action based on the admission agreement was simply another attempt to assert third-party-beneficiary rights under the BCBS provider agreement. St. Bernards again alleged that the admission

---

[1]Appellants had previously requested that St. Bernards produce the BCBS provider agreement in discovery, which St. Bernards refused to provide.

agreement did not require it to bill BCBS for appellants' medical care, specifically pointing to the language in the admission agreement that stated patients "shall be personally responsible for any and all charges not *paid* pursuant to the above assignment of insurance benefits." St. Bernards claimed that since BCBS did not pay any of appellants' medical charges, appellants were clearly responsible for the full amount of their bills. St. Bernards contended that appellants merely assumed that the hospital would bill BCBS.

St. Bernards argued that appellants' Arkansas Deceptive Trade Practices Act claims failed as a matter of law because (1) the claims were not based on violations of the Arkansas Constitution as mandated by the ADTPA, (2) appellants did not allege or prove they suffered an actual financial loss, (3) the claims sounded in contract, and (4) the claims were not pled with the requisite particularity. Finally, St. Bernards contended that the admission agreement did not create a fiduciary relationship with appellants; thus, appellants' breach-of-fiduciary-duty claim must fail.

Appellants filed their second amended class-action complaint on March 5, 2020, solely to add ProAssurance Indemnity Company, Inc. ("ProAssurance"), St. Bernards' liability insurance carrier, as a party and maintained all their prior causes of action. Appellants attached the October 2015 correspondence from RevClaims requesting an update concerning appellant Scott, which included the handwritten response from appellants' counsel stating that the case status was pending, that Scott had no med pay, and that RevClaims should "file health insurance immediately." In separate correspondence,

15

appellants' counsel requested a 15 percent reduction from RevClaims in appellants' medical bills with St. Bernards.

On March 10, the circuit court entered an agreed order extending appellants' time to respond to St. Bernards' second motion for summary judgment for "twenty-one (21) days from the date the Court issues a ruling on St. Bernards Hospital, Inc.'s first Motion for Summary Judgment, currently pending before the Court. . . ." On March 10, the circuit court also dismissed appellants' claims against RevClaims for breach of contract, breach of contract as third-party beneficiary, and breach of fiduciary duty but allowed appellants' claims for violation of the ADTPA and unjust enrichment to survive. RevClaims filed a motion to adopt St. Bernards' arguments in its second motion for summary judgement and motion to dismiss. Appellees each filed answers to appellants' second amended class-action complaint.

On April 29, 2020, the circuit court conducted a hearing on St. Bernards' first motion for summary judgment and appellants' motion to compel discovery. St. Bernards clearly indicated that the hearing was solely to address its first motion for summary judgment. Appellants agreed that the court should consider the summary-judgment argument first because the parties agreed that if summary judgment was denied, there would be no other objections to discovery. St. Bernards argued that the crux of appellants' claims was whether their damages were proximately caused by St. Bernards' decision not to submit appellants' medical bills to BCBS. St. Bernards argued that appellants' failure to file their own claims

16

with BCBS for the medical treatment broke the causal chain from St. Bernards' refusal to file such claims. St. Bernards argued that appellants' damages were thus all self-inflicted.

St. Bernards argued that if appellants had filed their own insurance claims with BCBS, the hospital would have been required to accept payment in full from BCBS. St. Bernards contended that no additional discovery was necessary because the court's determination on the issue of proximate cause would be determinative of appellants' claims. St. Bernards claimed that all the discovery information requested by appellants went to the issue of liability and did not pertain to proximate cause. St. Bernards argued that appellants' damages were more closely connected to the appellants' failure to file their insurance claims with BCBS when it became clear that St. Bernards would not do so in June 2015. St. Bernards asserted that appellants did not argue that their reliance on the admission agreement or St. Bernards' website regarding the filing of insurance claims caused their damages. St. Bernards pointed out that appellants paid their medical bills after the lien had expired, so at that time, the lien could not have impaired their third-party claim. Furthermore, appellants admitted that they paid the medical bills from their third-party settlement proceeds. St. Bernards argued that no issue of fact existed for the court to consider because no reasonable minds could differ on whether St. Bernards' actions were the proximate cause of appellants damages.

Appellants argued that the issue of proximate cause is a negligence concept and is inapplicable to the first two counts in their complaint for breach of contract and third-party-beneficiary breach of contract. Appellants conceded that the discussion of proximate cause

might be relevant to their ADTPA claim. Appellants claimed that the provider agreement St. Bernards attached to its second motion for summary judgment established that the hospital had a contractual duty to bill BCBS for its patients' medical claims. Appellants argued that they were entitled to have the benefit of adequate discovery before responding to a motion for summary judgment.

Appellants disputed St. Bernards' suggestion that appellants had the duty to file their own medical claims with BCBS and that failure to file such claims absolved the hospital of any liability. Appellants claimed that the admission agreement and assignment of insurance claims constituted a request that St. Bernards bill BCBS for their medical care and an agreement to pay any amounts not paid by insurance. Appellants noted that once BCBS was billed for their treatment, they would still owe copayments or deductibles to St. Bernards. Appellants contended that they had no reason to believe St. Bernards was not going to submit their medical claims to BCBS.

Appellants again asserted that St. Bernards billed them 100 percent of the cost of their medical bills, violating the BCBS network-participation agreement. Appellants further noted that the BCBS *Providers' News* newsletters from March 2008 and September 2008 stated affirmatively that providers affording services to BCBS-insured patients should not wait to file claims on behalf of the patients regardless of the cause of the member's illness or injury. Appellants discussed the language in the September 2008 *Providers' News* wherein BCBS stated that "any attempt to bill a member or collect against a member or their assets for covered services will be deemed a violation of the network participation agreement."

18

Appellants argued that the September 2008 *Providers' News* further stated that if a provider failed to file a claim on behalf of the BCBS-insured patient within the 180-day deadline, that providers could not recover any amounts from the member.

Appellants directed the court to the provider agreement between BCBS and St. Bernards wherein St. Bernards agreed to seek payment only from BCBS for covered services with the exception of copayments, coinsurance, and deductibles. St. Bernards further agreed in the provider agreement not to attempt to recover any amounts from members for covered services in excess of the agreed PPO payment amounts. Appellants argued that this evidence established that St. Bernards had breached the provider agreement with BCBS in relation to their medical claims. Appellants claimed that appellees waited until after the 180-day deadline had expired before giving any indication that BCBS would not be billed for their medical care. Appellants contended that reaching out to the hospital or its collection agency and asking what was owed did not constitute a waiver of its rights to object to making such payments.

Appellants asserted that several jurisdictions had considered the same issue and concluded that providers could not use medical-lien statutes to circumvent their provider agreements with insurers. Appellants concluded, arguing that they never claimed the medical lien filed against Scott was the basis for their causes of action; instead, the crux of their action was based on St. Bernards' and RevClaims' billing practices. Appellants claimed that appellees' suggestion that they were entitled to collect the full amounts of appellants' medical bills was the fraudulent action that appellants relied on to their detriment in light

of the fact that the assignment agreement, policy, and provider agreement all required St. Bernards to bill BCBS for appellants' medical treatment.

Appellees on rebuttal argued that the issue of proximate cause applied to both contract and tort claims. Appellees further claimed that the issues of liability were irrelevant in light of the proximate-cause issue. Appellees did not raise, and no discussion was had regarding, the voluntary-payment rule. The court concluded the hearing, noting that the motion to compel would be held in abeyance pending its ruling on the motion for summary judgment.

On June 17, 2020, the circuit court granted St. Bernards' second motion for summary judgment and motion to dismiss, finding appellants' claims were barred by the voluntary-payment rule. The court further concluded that appellants failed to state an ADTPA claim because their claims sounded in contract, not tort. The circuit court stated it was unnecessary to consider St. Bernards' first motion for summary judgment since the case was dismissed under the voluntary-payment rule. The circuit court found that RevClaims had adopted St. Bernards' motions to dismiss and for summary judgment, and as such, the court dismissed appellants' claims against RevClaims as well. Appellants filed a notice of appeal on July 13, 2020. In their initial appeal, appellants asserted the same issues as those herein— that the circuit court's sua sponte grant of St. Bernards' second motion for summary judgment deprived them of their rights to respond and meet proof with proof.

On October 20, 2021, this court dismissed appellants' appeal without prejudice, finding that the circuit court's July 13, 2020, order was not a final, appealable order because

20

the circuit court's order of dismissal did not address appellants' claims against ProAssurance. *See Scott v. RevClaims, LLC*, 2021 Ark. App. 401. This court dismissed the appeal without prejudice "so that the circuit court may enter an appropriate order." *Id.* at 5. On December 16, 2021, the Arkansas Supreme Court denied appellees' petition for review, and the mandate was issued.

On December 20, 2021, appellants sent a letter to the circuit court providing a copy of this court's order dismissing their appeal. Appellants informed the circuit court that their argument on appeal was that the court erroneously based its ruling on issues that had not been fully briefed or developed and requested rulings from the court. Appellants further asked the court to clarify those issues going forward. Alternatively, appellants asked the court to enter the proposed order of dismissal if the circuit court had intended to dismiss all appellees. Appellees sent a letter to the circuit court, arguing that the court's jurisdiction was limited to entering an order dismissing all appellees in accordance with this court's order of dismissal without prejudice and attached this court's opinion. On January 7, 2022, the circuit court entered the order of dismissal with prejudice as to all parties. It is from this order appellants instituted the present appeal.

## II. *Standard of Review*

"Our law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law." *J-McDaniel Constr. Co., Inc. v. Dale E. Peters Plumbing Ltd.*, 2014 Ark. 282, at 6–7, 436 S.W.3d 458, 464). "Once the moving party has

established a prima-facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact." *Id.* "On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered." *Id.* "We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties." *Id.*

"In reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Ark. State Claims Comm'n v. Duit Constr. Co.*, 2014 Ark. 432, at 6–7, 445 S.W.3d 496, 501. "In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed." *Johnson v. Butler*, 2016 Ark. 253, at 5, 494 S.W.3d 412, 416. "However, our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief." *Id.*

III. *Issues on Appeal*

First, appellants argue that the circuit court erred in granting appellees' second motion for summary judgment because their time to respond had not expired; thus, they were not permitted the opportunity to respond. Second, appellants claim the circuit court abused its discretion in granting summary judgment before any discovery could take place.

## IV. *Opportunity to Respond*

Appellants argue that the circuit court erred in sua sponte ruling on St. Bernards' second motion for summary judgment and motion to dismiss without notice or opportunity to meet proof with proof. Appellees contend that appellants failed to preserve the issue of the circuit court's sua sponte ruling because they neither objected to the court's order nor obtained a ruling on any such objection.

As set forth above, St. Bernards filed its first motion for summary judgment and its statement of undisputed facts arguing primarily that appellants' failure to file their own health insurance claims led to their purported damages, and such failure broke the causal chain from St. Bernards' refusal to file such claims. At the hearing, St. Bernards focused its entire argument on whether appellants' damages were proximately caused by St. Bernards' decision not to submit appellants' medical bills to BCBS and its claim that its admission agreement did not require it to bill insurance for the services rendered to appellants. St. Bernards did not raise the voluntary-payment rule in its briefs in support of its first motion for summary judgment or at the hearing.

Pursuant to the circuit court's March 10, 2020 order, appellants delayed responding to St. Bernards' second motion for summary judgment and motion to dismiss. The circuit court gave appellants no indication that it would rule on St. Bernards' second motion for summary judgment and motion to dismiss prior to receipt of appellants' response to the motion. However, the circuit court's order granted St. Bernards' second motion for summary judgment and motion to dismiss solely on the basis of the voluntary-payment rule.

The court noted that it would not reach the hospital's first motion for summary judgment regarding causation because appellants' claims were dismissed under the voluntary-payment rule.

"Any party opposing a motion shall serve a response within 10 days after service of the motion." Ark. R. Civ. P. 6(c). "The time periods set forth in this subdivision may be modified by order of the court and do not apply when a different period is fixed by these rules, including Rules 56(c) and 59(d)." *Id.* "The adverse party shall serve a response and supporting materials, if any, within 21 days after the motion is served. . . . For good cause shown, the court may by order reduce or enlarge the foregoing time periods." Ark. R. Civ. P. 56(c)(1).

The Arkansas Supreme Court has held that "it is clear that the circuit neither held a hearing nor considered the timely written response to the State's motion to dismiss that was filed by appellant. Therefore, we find that the order of dismissal was prematurely granted and reverse and remand for the court to consider appellant's written response or hold a hearing on the motion to dismiss." *Loveless v. Agee*, 2010 Ark. 53, at 3–4. This court recently recognized: "In Loveless, there was no hearing or time to respond before the court's ruling. Under the same circumstances here, we reverse and remand." *Absolute Roofing & Constr., LLC v. Paradise Devs., LLC*, 2023 Ark. App. 270, at 3, 666 S.W.3d 890, 892.

The Arkansas Supreme Court has further determined that "[t]he circuit court's sua sponte dismissal of appellants' complaint deprived them of their day in court, despite the fact that appellants maintained that there were disputed issues of fact outstanding, i.e., that

24

they had suffered damages." *Lipsey v. Giles*, 2014 Ark. 309, at 8, 439 S.W.3d 13, 19. "Therefore, because appellants were not given notice of the court's intentions and had no opportunity to meet proof with proof and show that a material issue of fact existed, we hold that the circuit court erred in dismissing their complaint sua sponte." *Id.* at 8–9, 439 S.W.3d at 19.

The voluntary-payment rule provides, "When one pays money on demand that is not legally enforceable, the payment is deemed voluntary. Absent fraud, duress, mistake of fact, coercion, or extortion, voluntary payments cannot be recovered." *Douglas v. Adams Trucking Co.*, 345 Ark. 203, 212, 46 S.W.3d 512, 518 (2001) (quoting *TB of Blytheville, Inc. v. Little Rock Sign & Emblem, Inc.*, 328 Ark. 688, 693–94, 946 S.W.2d 930, 932 (1997)). From the outset, appellees consistently argued that appellants voluntarily paid RevClaims on a lien against Scott that had expired. Similarly, appellants continuously argued that the payments to RevClaims were not voluntary but were either coerced, made under duress, or made under a mistake of fact.

Appellants contended that the facts before the circuit court were virtually identical to those in *Mounce*, No. 5:15-CV-05197, 2017 WL 4392048. The *Mounce* court found that, "[i]mportantly, at the time the bill was negotiated and the lien released, Ms. Mounce and her attorney were not aware of a 180-day claim-filing deadline mandated by the Hospital's Provider Agreement with Blue Cross." *Id.* at *10. Appellants argued they should be entitled to the same amount of discovery afforded in *Mounce*, noting the court concluded that "[s]ubsequent discovery has revealed that absent a timely filed claim with Blue Cross, the

25

Defendants arguably had no legal basis on which to collect any amount from Ms. Mounce." *Id.*

Furthermore, appellants consistently argued that their payments to RevClaims were not voluntary. Consideration of the application of the voluntary-payment rule requires a factual determination of whether such payments were made under fraud, duress, mistake of fact, coercion, or extortion. The *Mounce* court discussed the application of the voluntary-payment rule to claims substantially similar to those asserted by appellants. "Indeed, several courts have found that public policy does not favor allowing a voluntary payment defense to a statutory claim." *Id.* at *8. The Western District of Arkansas concluded, "Thus, the Court believes that the legislature's policy interest in protecting the public against unfair and deceptive trade practices would tend to weigh against allowing a business to use the voluntary payment rule to absolve itself of statutory liability." *Id.* "The Court is mindful of the fact that the Arkansas Supreme Court has yet to rule on this issue one way or another, but believes it would find that a common-law defense such as the voluntary payment rule is inapplicable in the statutory consumer-protection setting." *Id.* "If, however, the defense could be validly asserted with respect to the ADTPA claim, the Court observes that there are certain recognized exceptions to the voluntary payment rule, including duress, mistake of fact, fraud, coercion, or extortion." *Id.* "It goes without saying that the ADTPA was intended to create a statutory remedy for consumer fraud." *Id.*

Appellants argued at every turn that they should be permitted to conduct discovery to fully respond to appellees' initial motions for summary judgment. The circuit court

26

appeared to agree with appellants when it denied RevClaims' motion for summary judgment on the ADTPA and unjust-enrichment claims to allow discovery to proceed. However, discovery was never conducted because St. Bernards filed its first motion for summary judgment nine days after the circuit court's order denying RevClaims' motion. Furthermore, in its briefing and at the hearing on St. Bernards' first motion for summary judgment, the hospital consistently argued that any arguments concerning liability, which included the issue of voluntary payments, were irrelevant because the sole issue to be considered was proximate cause.

We conclude that the circuit court erred in dismissing appellants' complaint because appellants were not afforded the opportunity to fully respond to St. Bernards' second motion for summary judgment in accordance with the court's order granting the extension of time. We find that the circuit court erred in ruling as a matter of law, without permitting appellants to conduct any meaningful discovery, that the voluntary-payment rule barred appellants' claims. Appellants asserted that they were prepared to meet proof with proof on the voluntary-payment rule but were not given notice that the circuit court was prepared to rule on the issue.

We further find that appellants did not have an opportunity to object to the circuit court's order dismissing their claims. Appellants were not required to file a motion for new trial or motion to reconsider prior to appealing the circuit court's dismissal of their claims with prejudice. We reverse and remand for further proceedings to permit appellants to

27

conduct necessary discovery and to respond to the appellees' motions for summary judgment and motion to dismiss.

## V. *Discovery Permitted Before Summary Judgment*

Appellants next contend that the circuit court abused its discretion in granting summary judgment in favor of appellees before adequate discovery had been conducted. Appellants consistently argued below that appellees refused to provide any meaningful discovery concerning appellants' causes of action. Appellants eventually moved to compel discovery from St. Bernards. Appellants repeatedly argued that they were entitled to have the benefit of adequate discovery before responding to the motions for summary judgment. In their discussion of *Mounce*, *supra*, appellants noted that the same issues regarding appellees' billing practices were at issue in the present case. Appellants claimed that they should be afforded the same opportunity to conduct discovery as in *Mounce.*

The Arkansas Supreme Court has held that "before being required to fully demonstrate that evidence in response to a motion for summary judgment a plaintiff is entitled to have the benefit of adequate discovery from the opposing parties as the nature of the case requires." *Pledger v. Carrick*, 362 Ark. 182, 192, 208 S.W.3d 100, 105 (2005). "Those benefits were withheld in this case and the trial court should not have granted summary judgment until appellant was able to complete discovery and develop, if obtainable, the necessary proof." *Id.* "The circuit court has wide discretion in matters pertaining to discovery, and a circuit court's decision will not be reversed absent an abuse of discretion. An abuse of discretion occurs when discretion is applied thoughtlessly, without due

28

consideration, or improvidently." *Wynne-Ark., Inc. v. Richard Baughn Constr.*, 2020 Ark. App. 140, at 6, 597 S.W.3d 114, 117. "A motion for production of documents must be considered in light of the particular circumstances that give rise to it, and the need of the movant for the information requested." *Id.*

For the reasons discussed above, we find the circuit court abused its discretion in refusing to allow appellants the opportunity to conduct discovery before entering judgment against them. The information requested by appellants was essential to establish their claims against appellees for breach of contract, violations of the ADTPA, and unjust enrichment as discussed in detail in *Mounce.* Appellants must be afforded the opportunity to conduct meaningful discovery before responding to appellees' motions for summary judgment and to dismiss and must be afforded discovery to respond to the voluntary-payment rule. Accordingly, we reverse and remand to allow appellants to conduct discovery relevant to their claims to adequately respond to appellees' motions for summary judgment and to dismiss.

Reversed and remanded.

BARRETT and BROWN, JJ. agree.

*Lacy Law Firm*, by: *Brandon W. Lacy*; and *Daniels Law Firm, PLLC*, by: *Shawn Daniels*, for appellants.

*Womack Phelps Puryear Mayfield & McNeil, P.A.*, by: *Jeffrey W. Puryear* and *Ryan M. Wilson*, for separate appellee RevClaims, LLC.

*Waddell, Cole & Jones, PLLC* by: *Paul D. Waddell* and *Samuel T. Waddell*, for separate appellees St. Bernards Hospital, Inc.; and ProAssurance Indemnity Company, Inc.